J-S56025-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| DAVID ALLEN CAFFAS | |
| Appellant | No. 1963 MDA 2013 |

Appeal from the PCRA Order of September 9, 2013
In the Court of Common Pleas of Perry County
Criminal Division at No.: CP-50-CR-0000515-2009

BEFORE:  PANELLA, J., WECHT, J., and PLATT, J.[*]

MEMORANDUM BY WECHT, J.:                **FILED NOVEMBER 05, 2014**

David Allen Caffas ("Caffas") appeals the September 9, 2013 order dismissing his first, counseled petition under the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46.  We affirm.

The PCRA court summarized the factual history of the case as follows:

At approximately 8:53 a.m. on August 11, 2009, Trooper Steven Arnold [("Trooper Arnold")] responded to a shooting at [Caffas'] residence.  There, [Trooper Arnold] observed a lifeless Dan Miller [("Miller")].  Approximately three years prior to the date in question, [Caffas] had anonymously given, through [Miller], $300.00 to their mutual friends, Patrick and Pam Brown.  On August 9, 2009, [Caffas] had requested repayment of $360.00 and Patrick met [Caffas] at [Caffas'] residence, at which time they engaged in an argument regarding the money.  [Miller's] fiancée, Mary McCue, testified that, on that date, she had called [Caffas] and left messages to the effect that Patrick and Pam

_____

[*]      Retired Senior Judge assigned to the Superior Court.

had brought the money to [Miller's] home. [Caffas] testified to the contrary—that he was not aware that [Miller and his fiancée] had the money until the morning of the shooting. [Caffas] reported to [Trooper Arnold] that, on August 10, the marijuana grow room in his home had been destroyed, but did not relate that he believed that [Miller] had been involved.

On the morning of the shooting, [Miller] arrived at [Caffas'] residence and told [Caffas] that "Rousta" (Patrick Brown) was going to kill [Caffas].[1] During their argument, [Miller] threw money in [Caffas'] yard, which was later determined to be $360.00. [Caffas] then entered the house and closed the door and locked it. On his fourth try, [Miller] knocked the door open, at which point [Caffas] reached for his air rifle and shot [Miller] in the chest. [Caffas] then called 911. . . .

\* \* \*

After the police arrived, [Caffas] admitted to [Trooper Arnold] that he had been growing five or nine marijuana plants in his house. The police obtained a search warrant and executed it that day. The police discovered marijuana plants and pots that had been overturned. They continued searching outside the residence and followed a path into the woods, where they found four piles of marijuana plants, discarded like somebody just dumped them in a hurry. [Caffas] stated that they were his, but he had no idea how they got there. After taking the plants to the state police barracks at Newport, Trooper Jon Mearkle counted them and found there to be 93 plants. [Caffas] testified that he told Corporal Taylor[2] that up to 14 of the plants were his. On cross-examination, [Caffas] testified that probably about 18 of the plants were his and that he had previously told police that he had only four or five because he wanted to try to keep it as low as possible.

---

[1] Caffas had composed fliers which advertised Patrick Brown as a drug dealer in retaliation for the unpaid loan. *See Commonwealth v. Caffas*, Nos. 1213 and 1214 MDA 2011, unpublished memorandum at \*2 (Pa. Super. filed April 3, 2012).

[2] Corporal Taylor's full name does not appear in the certified record.

PCRA Court Opinion ("P.C.O."), 2/5/2014, at 2-3 (internal quotation marks and record citations omitted).

The Commonwealth charged Caffas with third-degree murder, aggravated assault, simple assault, recklessly endangering another person, voluntary manslaughter, and involuntary manslaughter in one criminal information;[3] in a separate criminal information, Caffas was charged with manufacturing a controlled substance and possession with intent to use drug paraphernalia.[4]  On February 10, 2010, the Commonwealth moved to consolidate the two indictments against Caffas.  The trial court granted the motion on March 11, 2010, with no objection from Caffas' defense counsel. Notes of Testimony, PCRA Hearing ("N.T. PCRA"), 7/16/2013, at 10.

The trial court presided over a jury trial on both cases on August 23 and 24, 2010, in which the jury found Caffas guilty of manufacturing a controlled substance, possession of drug paraphernalia, simple assault, recklessly endangering another person, and involuntary manslaughter.  The jury acquitted Caffas of third-degree murder and voluntary manslaughter. On October 7, 2010, the court sentenced Caffas to not less than eight and one-half years nor more than twenty years in a state correctional institution.

---

[3]    *See* 18 Pa.C.S.A. §§ 2502(c), 2704(a)(4), 2702(a)(4), 2705, 2503(a)(1), and 2504(a), respectively.

[4]    *See* 35 P.S. §§ 780-113(a)(30) and 780-113(a)(32), respectively.

On October 18, 2010, Caffas timely filed post-sentence motions, which the trial court denied by operation of law on June 27, 2011. Caffas then timely filed a notice of appeal on July 11, 2011. This Court determined that Caffas' sentence for manufacturing a controlled substance was in error, and remanded for resentencing on April 3, 2012. *See Commonwealth v. Caffas*, Nos. 1213 and 1214 MDA 2011, slip op. at *8 (Pa. Super. filed April 3, 2012). The trial court resentenced Caffas on August 2, 2012, to an aggregate of not less than three and one-half years nor more than ten years, plus a flat sentence of five years to be served consecutively in a state correctional institution. Caffas did not file a direct appeal of his resentence.

On January 29, 2013, Caffas timely filed a counseled, first PCRA petition. *See* 42 Pa.C.S.A. § 9545(b)(1). The PCRA court held a hearing on July 16, 2013, where Caffas and his trial counsel, Vincent Monfredo, Esq., testified. The PCRA court denied Caffas' PCRA petition on August 9, 2013. For unknown reasons, the order was not filed until September 9, 2013. On September 18, 2013, Caffas timely filed a notice of appeal to this Court. On November 6, 2013, the PCRA court ordered Caffas to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b). On November 22, 2013, Caffas timely filed his concise statement. On February 5, 2014, the PCRA court issued a Pa.R.A.P. 1925(a) opinion.

Caffas raises the following two issues on appeal:

1. Whether trial counsel was ineffective for failing to oppose the Commonwealth's motion to consolidate the two dockets against [Caffas?]

2. Whether trial counsel was ineffective for failing to introduce evidence showing that [Miller] had marijuana in his system at the time of his death[?]

Caffas' Brief at 3.

Our standard of review for PCRA claims is well-settled:

Our standard of review of the denial of a PCRA petition is limited to examining whether the court's determination is supported by the evidence of record and free of legal error. This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. Further, the PCRA court's credibility determinations are binding on this Court, where there is record support for those determinations.

*Commonwealth v. Anderson*, 995 A.2d 1184, 1189 (Pa. Super. 2010) (citations omitted).

Caffas presents to this Court two challenges to the effectiveness of his counsel at trial. Pursuant to the PCRA, a petitioner is only entitled to relief when he pleads and proves that his conviction or sentence resulted from, *inter alia*, the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

Our Supreme Court has mandated that, to plead and prove a claim of ineffective assistance of counsel, a petitioner must demonstrate that: (1) the underlying claim has arguable merit; (2) counsel had no reasonable basis for action or inaction; and (3) the petitioner suffered prejudice because of counsel's ineffectiveness. *See Commonwealth v. Pierce*, 527 A.2d 973,

975 (Pa. 1987).  A petitioner's claim of ineffectiveness will be denied if the petitioner fails to meet any one of the three prongs under *Pierce*. *Commonwealth v. Williams*, 863 A.2d 505, 513 (Pa. 2004).  Trial counsel is presumed to be effective and the petitioner bears the burden of proving otherwise.  *Commonwealth v. Ligons*, 971 A.2d 1125, 1137 (Pa. 2009). "[I]t is axiomatic that [trial] counsel will not be considered ineffective for failing to pursue meritless claims."  *Commonwealth v. Keaton*, 82 A.3d 419, 426 (Pa. 2013) (citation omitted).

In his first issue, Caffas claims that trial counsel was ineffective for failing to oppose the Commonwealth's motion to consolidate.  Caffas' Brief at 13, 17.  We disagree, because Caffas has failed to demonstrate that there is merit to his underlying claim.

The Pennsylvania Rules of Criminal Procedure permit the joinder of two separate indictments if the evidence from either offense would be admissible in a trial for the other offense and is capable of separation by the jury without confusion, or if the indictments are based upon the same act or transaction.  *See* Pa.R.Crim.P. 582(A)(1).  We resolve this issue under the first prong of Pa.R.Crim.P. 582(A)(1).  Our Supreme Court has developed the *Lark* test for determining whether consolidation of two informations is appropriate:

> (1) Whether the evidence of each of the offenses would be admissible in a separate trial for the other; (2) whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in

- 6 -

the affirmative; (3) whether the defendant will be unduly prejudiced by the consolidation of offenses.

***Commonwealth v. Collins***, 703 A.2d 418, 422 (Pa. 1997), citing ***Commonwealth v. Lark***, 543 A.2d 491, 496-97 (Pa. 1988). ***See also Commonwealth v. Natividad***, 773 A.2d 167, 174 (Pa. 2001) (discussing admissibility of evidence of other crimes where the conduct at issue is closely related).

The decision to consolidate separate indictments for trial rests solely within the discretion of the trial court, and "will be reversed only for manifest abuse of discretion or prejudice and clear injustice to the defendant." ***Commonwealth v. Morris***, 425 A.2d 715, 718 (Pa. 1981) (citations omitted).

In the present case, Caffas states that "trying a drug dealer for a homicide charge is a far different case than trying a homeowner who shot a man after he broke in his door." Caffas' Brief at 12. The record, however, indicates that the purpose of Miller's visit to Caffas on the day of Miller's death was to resolve a loan that Caffas made to Patrick Brown. ***See*** N.T. PCRA at 13. The record also demonstrates that Caffas printed a flier claiming Patrick Brown had "the best pot in town." Notes of Trial Testimony ("N.T. Trial"), 8/23/2010, at 195. Pamela Brown testified that the flier contained Patrick Brown's address and phone number. N.T. Trial, 8/24/2010, at 17. Caffas admitted to making the fliers because "[Miller] bought marijuana from Patrick [Brown]. This was his drug dealer." ***Id.*** at

67-68. Caffas hoped to provoke a reaction from Miller. *Id.* Trooper Arnold testified that the flier was recovered from the computer room in Caffas' home. *Id.* at 16. Caffas also testified that some of the marijuana plants recovered from his property belonged to Miller, and that, prior to their dispute, Miller was storing them on Caffas' property with Caffas' permission. *Id.* at 85.

Based upon a close review of the record, it is clear that the parties' relationship centered on drugs. In the context of this relationship, Caffas, through Miller, lent Brown $300.00. It has been alleged that Brown was Miller's drug dealer, and it was also alleged that Miller was storing marijuana plants on Caffas' property. This relationship culminated with the act of Caffas shooting Miller after an argument regarding the loan that Caffas had made to Brown. Here, if Caffas were to be tried separately for the two informations, he would not be insulated from the evidence related to either the homicide or the marijuana plants. The relationship of the parties encompassed the marijuana plants, the loan dispute, and, ultimately, the shooting. *See Commonwealth v. Childress*, 680 A.2d 1184, 1187 (Pa. Super. 1996), *appeal denied*, 689 A.2d 231 (Pa. 1997) (holding that any motion for severance lies in the sole discretion of the trial court).

Caffas fails to satisfy the first element of the *Lark* test. The evidence as to both the homicide and the drug offenses would be admissible in separate trials, inasmuch as that evidence formed the natural development of both cases, as the Court contemplated in *Collins*. *See Collins*, 703 A.2d

at 423 (holding that a relationship between parties constituted case history and evidence that would have been admissible for separate drug and homicide charges, which merited consolidation).

Caffas also fails to satisfy the second element of the **Lark** test: whether the evidence for each charge is capable of separation by the jury so as to avoid danger of confusion. **Id.** at 422. In **Natividad**, *supra*, our Supreme Court affirmed the judgment of sentence following an appellant's consolidated jury trial for the early-morning robbery of one victim and the first-degree murder of a second victim later that night. **Natividad**, 773 A.2d at 173. In addressing the issue of jury confusion, the Court observed that the evidence of the robbery of the first victim's car circumstantially identified the appellant as the shooter of the second victim, as he had been seen driving that car, but "[g]iven the temporal separation and the distinct nature of the conduct at issue in the two incidents, we believe that the jury was capable of keeping the evidence separate as to each criminal act." **Id.** at 174.

Here, similarly, although evidence of the drug and homicide offenses would be mutually admissible as previously discussed, the conduct supporting the drug charges (that is, the cultivation of marijuana on Caffas' property) and the actions which led to the homicide charge (the shooting of Miller) were temporally separate and distinct in nature. Indeed, Caffas concedes that "these are completely distinct crimes." Caffas' Brief at 14-15. Therefore, we conclude that the jury in the present case was capable of

separating the facts and evidence of the two informations without confusion. *Natividad*, 773 A.2d at 173. Thus, Caffas has not satisfied the second element of the *Lark* test. *See See Collins*, 703 A.2d at 422.

Finally, upon review of the record and Caffas' brief, we conclude that Caffas cannot successfully satisfy the third prong of the *Lark* test by demonstrating prejudice. *Id.* As noted, not only was the jury capable of separating the facts and evidence of the two informations without confusion based upon the unique conduct at issue in each charge, *see* Pa.R.Crim.P. 582(A)(1), but also the evidence was overwhelming in support of either charge such that no prejudice would result. On direct appeal, a previous panel of this Court determined that there was sufficient evidence to support the convictions for each charge and to reject Caffas' claims of self-defense. *See Commonwealth v. Caffas*, Nos. 1213 and 1214 MDA 2011, slip op. at *11 (Pa. Super. filed April 3, 2012) (holding, *inter alia*, that there was "sufficient evidence to establish Appellant constructively possessed marijuana plants; police found 'grow room' in Appellant's house containing remnants of marijuana plants; plants themselves were in rear of Appellant's house down well-worn foot path; [and] jury's rejection of self-defense claim was not against weight of evidence; jury heard evidence regarding argument between Appellant and Victim and was free to reject self-defense claim").

Caffas now alleges that "the jury likely inferred from the drug offense that Caffas had a criminal predisposition or was engaged in a criminal lifestyle." Caffas' Brief at 15. However, "[a]rguing a potential for error is

insufficient to obtain relief; actual error affecting the outcome of the proceedings must be established." ***Natividad***, 773 A.2d at 174. Caffas has not established any actual error arising from consolidation of the drug and homicide charges, and thus has failed to demonstrate prejudice.[5] Because Caffas fails to satisfy the three elements of the ***Lark*** test, the Commonwealth's motion properly was granted. ***See Morris***, 425 A.2d at 718 (holding that the decision to consolidate rests solely in the discretion of the trial court and that reversal requires a showing of prejudice).

Thus, we conclude that the underlying claim lacks arguable merit, and that trial counsel was not ineffective for failing to oppose a motion that the trial court properly granted. ***Keaton***, 82 A.3d at 426. Because Caffas has failed to prove the first prong under ***Pierce***, we need not analyze the other two prongs in relation to trial counsel's failure to oppose the Commonwealth's motion to consolidate. ***See Williams***, 863 A.2d at 513. Caffas' first issue does not merit relief.

In his second issue, Caffas claims that trial counsel was ineffective for failing to present the toxicology report from Miller's autopsy and for failing to present to the jury the testimony of the pathologist who performed the autopsy. Caffas alleges that his trial counsel was ineffective due to his

---

[5] In fact, the jury acquitted Caffas of the third-degree murder and voluntary manslaughter charges, which tends to undermine Caffas' claim that the drug charges negatively "influenced the jury's perception of his actions in shooting Daniel Miller." Caffas' Brief at 15.

failure to present evidence indicating that Miller's blood and urine tested positive for marijuana. Caffas' Brief at 17-18. We disagree.

We first address Caffas' claim that trial counsel was ineffective for failing to introduce the toxicology report. *Id.* at 17. Caffas claims that evidence in the toxicology report that Miller was intoxicated at the time of his death would have supported Caffas' self-defense claim. However, he detrimentally concedes that "the report, standing alone, was not admissible[.]" *Id.* As previously stated, "[trial] counsel will not be considered ineffective for failing to pursue meritless claims." *Commonwealth v. Keaton*, 82 A.3d 419, 426 (Pa. 2013) (citation omitted). Thus, he cannot state a claim for ineffective assistance of counsel on this ground.

Instead, Caffas raises a derivative claim of ineffective assistance of counsel, that "the testimony of the pathologist who prepared the report would have been admissible." Caffas' Brief at 18. Preliminarily, we observe that Dr. S. Land, who performed Miller's autopsy, did not prepare the toxicology report. At the PCRA hearing, the Commonwealth recalled that the parties "stipulated that the coroner could testify to the toxicology report." N.T. PCRA at 38. Although the coroner testified on the second day of trial, trial counsel did not elicit evidence about the toxicology report from him. *Id.* at 40. Dr. Land did not testify at trial. *Id.* at 43. Nonetheless, Caffas does not challenge counsel's failure to admit the toxicology report through the coroner, but specifically challenges the failure to call Dr. Land, not the

- 12 -

coroner, as a witness for this purpose.[6]  ***See*** Caffas' Brief at 17-18.  Thus, we will only address trial counsel's failure to call Dr. Land.

Our Supreme Court has stated that a petitioner must demonstrate the following in order to prove that counsel was ineffective for failing to call a witness: (1) the witness was available to testify; (2) counsel knew, or had a duty to know, of the existence of the witness; (3) the witness was willing and able to "cooperate and appear on behalf of the defendant"; and (4) the testimony must have been necessary in order to avoid prejudice. ***Commonwealth v. Priovolos***, 715 A.2d 420, 422 (Pa. 1998). "As [an a]ppellant's trial counsel is presumed to have rendered him effective assistance, he will not be deemed ineffective for failing to call . . . witnesses based solely on [a]ppellant's unsubstantiated allegations concerning the witnesses' existence and willingness to testify on his behalf." ***Commonwealth v. Lopez***, 739 A.2d 485, 496 (Pa. 1999); ***see also Commonwealth v. Walls***, 993 A.2d 289, 302 (Pa. Super. 2010) (applying same standard to expert witnesses).

---

[6]  We observe that, "[e]ven without the records being introduced into evidence, [a] physician could have expressed his medical opinion '. . . based in part on reports of others which are not in evidence but upon which the expert customarily relies in the practice of his profession.'" ***Commonwealth v. Karch***, 502 A.2d 1359, 1361 (Pa. Super. 1986) (citations omitted).  Thus, the toxicology report may have been admissible via Dr. Land, with a proper foundation.  Nonetheless, as discussed, *infra*, Caffas has failed to carry his burden of proof to demonstrate that Dr. Land would have so testified.

Caffas states that Dr. Land was never called to testify at trial regarding the marijuana that was found in Miller's system. Caffas' Brief at 18. However, at no point did Caffas demonstrate, either in his PCRA petition or at the PCRA hearing, that Dr. Land was, in fact, willing and available to testify. ***Priovolos***, 715 A.2d at 422; N.T. PCRA at 43, 71. A review of Caffas' brief and the record indicates that Caffas has failed to carry his burden of proof on this most basic issue, either by presenting Dr. Land as a witness at the PCRA hearing, providing an affidavit averring his willingness to testify, or otherwise. ***See*** Caffas' Brief at 17-18; N.T. PCRA at 38, 71. Thus, absent any evidence that Dr. Land would have testified on Caffas' behalf regarding the contents of the toxicology report, we will not deem trial counsel ineffective on this basis. ***See Lopez***, 739 A.2d at 496. Accordingly, Caffas' second issue does not merit relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/5/2014