425 A.2d 715

**COMMONWEALTH of Pennsylvania**

**v.**

**Bernard MORRIS, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 17, 1980.

Decided Jan. 30, 1981.

John W. Packel, Chief, Appeals Div., Karl Baker, Asst. Defender, Philadelphia, for appellant.

Robert B. Lawler, Chief, Appeals Div., Andrew Cohn, Philadelphia, for appellee.

Before O'BRIEN, C. J., and ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

NIX, Justice.

Appellant, Bernard Morris, was convicted by a jury of two robberies and sentenced to consecutive prison terms of one of three years. Although the robberies stemmed from two separate incidents which occurred five days apart and there was a separate information for each robbery, appellant was tried for both offenses in one proceeding; his motion for separate trials on the two informations was denied. Post-verdict motions were also denied, and the judgment of sentence was affirmed by an evenly divided Superior Court, 258 Pa.Super. 24, 391 A.2d 653. We granted appellant's petition for allowance of appeal to address the propriety of the trial judge's refusal to grant the motion for severance.

### I.

On January 2, 1975, at approximately 6:30 p. m., Geraldine Seawright and her two small children arrived at the public housing apartment building where they lived. As they entered, a man whom they did not know addressed them in a friendly manner and followed them into the lobby where he spoke with a second man while the group waited for an

elevator. After a wait of approximately ten minutes, Mrs. Seawright, her children and the two men walked to the adjoining apartment building to use an elevator there since all floors of the two buildings were connected with *breezeways*. The second man departed from the elevator on the third floor. Mrs. Seawright pushed the button for the tenth floor and the remaining man pushed the twelfth floor button. Somewhere around the eighth floor, the man pushed the emergency stop button and announced a holdup. Mrs. Seawright insisted that she had no money. The man rejected Mrs. Seawright's offer of her purse and struck her several times while searching inside her brassiere for money. At this point, Mrs. Seawright had been knocked to the floor and held there by the man's foot resting on the side of her face. The man threatened to kill the children and grabbed the face of Mrs. Seawright's daughter. During this time he kept one hand in his pocket as if concealing a weapon. In her struggle, Mrs. Seawright managed to de-activate the emergency stop button, and the elevator door opened at the tenth floor. The man again struck and searched Mrs. Seawright, found a change purse containing $95.00 inside her brassiere and ran from the elevator, through the breezeway, into the adjoining building. Mrs. Seawright went to the apartment of Craig Scott, a relative and a housing authority police officer. Housing and city police arrived, and she gave them a description of the robber.

Five days after the first robbery, on January 7, 1975, shortly before 7:00 p. m., Mrs. Carrie Rodgers and her four-year-old son were waiting in the same building for an elevator. Two other women were also waiting for the elevator, and two men were talking nearby. Mrs. Rodgers, her son, the two women, and one of the men boarded the elevator. The two women got off at lower floors. Mrs. Rodgers pushed the eleventh floor button but, for some reason unknown to her, the elevator stopped at the ninth floor. The man held the door open with his knee and announced a holdup. When she said she did not have any money, the man replied that he would have to search her.

He found food stamps and a small amount of cash in her pockets but nothing in her brassiere. He then tried to take her leather coat. When Mrs. Rodgers told her young son to get his father, the man used the hat she was wearing to gag her. When he succeeded in taking off her coat, he ran from the elevator, through the breezeway, into the adjoining building. She went to the housing authority police to report the robbery and gave a description of the robber.

Officer Scott, on the basis of Mrs. Seawright's description of the man who robbed her, had decided that a man named "Boonie" might be the robber. He asked "Boonie", appellant herein, to go with him to Mrs. Seawright's house. En route, the two stopped at the market where Scott's wife had gone and where Mrs. Rodgers was also at that time. Mrs. Rodgers immediately identified appellant as the man who had robbed her. This identification occurred on January 10, 1975, three days after the Rodgers robbery. Appellant was arrested, and at a line-up Mrs. Seawright also identified appellant as the man who had robbed her earlier.

## II.

Rule 219(b) of the Pennsylvania Rules of Criminal Procedure provides, in relevant part, that "two or more offenses . . . may be charged in the same indictment if they are of the same or similar character. . . ." Although the rule applies specifically to joinder of offenses, this Court has found it equally applicable to the consolidation for trial of separate indictments or informations.[1] *Commonwealth v. Lasch*, 464 Pa. 573, 347 A.2d 690, (1975); *Commonwealth v. Moore*, 463 Pa. 317, 344 A.2d 850 (1975). Subsection (d) of Pa.R.Crim.P. 219 provides that "the court, of its own motion, or on application of a party, may order separate trials of the counts. . . ."

1. Joinder of offenses in an indictment or information is the act of the prosecutor, subject to review by the court. Consolidation is the procedure by which more than one indictment or information are brought together for a single trial. Consolidation is the act of the court. Comment, Joinder of Counts as a Violation of an Accused's Right to Remain Silent, 41 Temple L.Q. 458 (1968).

■ It is well established that the propriety of consolidating separate indictments for trial is a matter of discretion with the trial judge, and the exercise of this discretion will be reversed only for manifest abuse of discretion or prejudice and clear injustice to the defendant. *Commonwealth v. Moore*, 463 Pa. 317, 320, 344 A.2d 850, 852 (1975); *Commonwealth v. Patrick*, 416 Pa. 437, 445, 206 A.2d 295, 298 (1965); *Commonwealth ex rel. Bolish v. Banmiller*, 396 Pa. 129, 132, 151 A.2d 480, 481 (1959); *Commonwealth ex rel. Spencer v. Ashe*, 364 Pa. 442, 446, 71 A.2d 799, 801, *cert. denied*, 339 U.S. 990, 70 S.Ct. 1015, 94 L.Ed. 1390 (1950). The question to be addressed in this case is the proper standard for exercise of the trial court's discretion when the defendant has moved for relief from an asserted prejudicial consolidation.

■ The traditional justification for permissible joinder of offenses or consolidation of indictments appears to be the judicial economy which results from a single trial. The argument against joinder or consolidation is that where a defendant is tried at one trial for several offenses, several kinds of prejudice may occur: (1) The defendant may be confounded in presenting defenses, as where his defense to one charge is inconsistent with his defenses to the others; (2) the jury may use the evidence of one of the offenses to infer a criminal disposition and on the basis of that inference, convict the defendant of the other offenses; and (3) the jury may cumulate the evidence of the various offenses to find guilt when, if the evidence of each offense had been considered separately, it would not so find. *Commonwealth v. Lasch*, 464 Pa. 573, 585, 347 A.2d 690, 696 (1975); *Commonwealth v. Peterson*, 453 Pa. 187, 194, 307 A.2d 264, 267 (1975); *Drew v. United States*, 331 F.2d 85, 88 (D.C.Cir. 1964). Thus in arriving at a meaningful standard to guide the trial court in its exercise of discretion, and to permit appellate courts to determine whether the trial court abused this discretion, we must weigh the possibility of prejudice and injustice caused by the consolidation against the consideration of judicial economy.

In *Commonwealth v. Peterson, supra,* a plurality[2] of this Court held that the determinative factors in a court's decision to sever indictments are whether "the evidence of each of [the] particular crimes would not have been admissible in a separate trial for the other,"[3] *or* whether "the evidence is capable of separation by the jury [so that] the danger of confusion is not present...."[4]   Applying this test to the facts before them, Justice Eagen concluded that although the evidence of each of the particular crimes would not have been admissible in a separate trial for the other, joinder was permissible for the evidence of the separate crimes was sufficiently clear and simple as to be capable of separation by the jury.   Consolidation of the two indictments was therefore found to be proper.   Mr. Justice Pomeroy concurred in the result, but only because he was satisfied that the test of Pa.R.Crim.P. 219(b), "transactions connected together or constituting parts of a common scheme or plan," had been met.   He specifically "found it unnecessary to decide whether joinder of offenses under Rule 219 is permissible beyond the scope of the common scheme, plan or design exception to the evidentiary rule that a man's past misconduct is not relevant in establishing his conduct on a later occasion." [Footnote omitted].   *Id.,* 453 Pa. at 202, 307 A.2d at 272.   In his dissenting opinion, Justice Roberts, joined by this writer and Justice Manderino, found it "both anomalous and contradictory to permit consolidation of two crimes in one trial when evidence of one crime would not be admissible at the trial of the other crime if tried separately."   *Id.,* 453 Pa. at 203, 307 A.2d at 272.   The rule advocated by the dissent was where "a defendant is charged with two separate and distinct offenses, so dissimilar that it would be prejudicial error to admit evidence of one offense at a

**2.**   Chief Justice Jones and then Justice O'Brien (now Chief Justice) joined Justice (later Chief Justice) Eagen's plurality opinion.   Justice Pomeroy filed a concurring opinion.   Justice Roberts filed a dissenting opinion which was joined by Justices Nix and Manderino.

**3.**   *Commonwealth v. Peterson, supra,* 453 Pa. at 199, 307 A.2d at 270.

**4.**   *Id.,* 453 Pa. at 200, 307 A.2d at 271.

separate trial of the other, the defendant should have, on a timely motion, an absolute right to severance of the offenses." *Id.*, 453 Pa. at 204, 307 A.2d at 273.

These lines of division remained unchanged in *Commonwealth v. Lasch, supra.* Justice Eagen, in his Opinion in Support of Affirmance, joined by Justices O'Brien and Pomeroy, found that since evidence of the various offenses would have been admissible in a separate trial of each offense, joinder of the offenses was not an abuse of discretion. *Commonwealth v. Lasch, supra.* In *dicta*, however, Justice Eagen reaffirmed his view that joinder would be proper "where the offenses charged were separate and distinct and where the evidence was easily separable by the jury." *Id.*, 464 Pa. at 584–85, n. 3, 347 A.2d at 695 n. 3. In his Opinion in Support of Reversal, Justice Roberts advocated adoption of the rule set forth in the American Bar Association Project on Standards for Criminal Justice, Standards Relating to Joinder and Severance, § 2.2, which provides that a defendant shall have an absolute right to severance of the offenses. In a second Opinion in Support of Reversal, Justice Manderino articulated the original test urged by the dissent in *Peterson, supra* :

> Whenever a defendant is charged with two or more separate and distinct offenses and evidence of one could not be admitted at a separate trial on the other offense, the defendant has an absolute right to severance of the offenses.

> *Commonwealth v. Lasch,* 464 Pa. at 594, 347 A.2d at 700–701.[5]

The Commonwealth urges us to adopt the test set forth in the plurality opinion in *Commonwealth v. Peterson, supra,* and to hold that a defendant is entitled to appellate relief from a refusal to sever separate indictments for trial only where the defendant was denied a fair trial because the jury could not have treated evidence relevant to each charge separately and distinctly in determining guilt as to each. Under this formulae even when the evidentiary test is not

5. This writer also noted that the judgment should be reversed.

met, joinder is permissible where the evidence is nonetheless capable of separation by the jury and the danger of confusion is not present.

Such a liberal rule on joinder of offenses reflects a concern for economy of judicial resources. It, however, fails to recognize the possibility that the jury may misuse the evidence no matter however, separable and distinct. As stated in *United States v. Foutz*, 540 F.2d 733 (4th Cir. 1976):

> The "simple and distinct" test . . . may well be an appropriate standard for measuring the prejudice resulting from the jury's confusing and cumulating the evidence. It does not address itself, however, to the graver mischief possible where the jury, while limiting its consideration of the evidence to the crime to which it relates, properly finds the defendant guilty of one crime but considers the finding probative of his guilt of another.

*Id.* at 738, n.3.

Moreover, the conservation of judicial resources and the efficient administration of justice, while estimable goals, does not justify the exposure of an accused to such a higher probability of prejudice. "When offenses are initially joined on the ground that they are of the same or similar character, and evidence of one offense would not be admissible at a separate trial for the other, the saving of time effected by a joint trial is minimal." *United States v. Foutz, supra* at 738. More importantly, the saving of judicial time can never be given preference over the integrity of the factfinding process. When it is concluded that the evidence of the one crime would not be admissible in the separate trial for the other, we are in effect saying that the evidence is irrelevant and prejudicial in the second trial. To allow irrelevant and prejudicial evidence to influence a verdict in the name of judicial economy is abhorrent to our sense of justice. Additionally, defendants in joint trials are treated differently from those who receive separate trial as a result of the lack of uniformity in the admission in the joint trial of evidence which would have been inadmissible in one of the single trials had there been no joinder.

■ Adoption of the American Bar Association's standard, providing for an absolute right to severance of the offenses, is appealing because of its simplicity. This rule, however, raises the question of whether implementation of such a broad right to severance is feasible in light of the heavy demands on today's criminal courts. Furthermore, in situations where evidence of one crime would be admissible at a separate trial of another, a rule requiring automatic severance would impose an undue burden on the administration of justice without providing any real benefit to the defendant. Therefore, it is the opinion of this Court that the middle course strikes the balance that is to be desired.

## III.

■ It is a principle of long standing in this Commonwealth that evidence of a distinct crime, except under special circumstances, is inadmissible against a defendant who is being tried for another crime because the commission of one crime is not proof of the commission of another, and the effect of such evidence is to create prejudice against the defendant in the jury's mind. *Commonwealth v. Fortune*, 464 Pa. 367, 373, 346 A.2d 783, 786 (1971); *Commonwealth v. Wable*, 382 Pa. 80, 84, 114 A.2d 334, 336 (1955). The general rule, however, allows evidence of other crimes to be introduced to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial, in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other. *Commonwealth v. Fortune, supra; Commonwealth v. Wable, supra.* Thus, although the law does not allow use of evidence which tends solely to prove that the accused has a "criminal disposition," evidence of other crimes is admissible for certain purposes if the probative worth of this evidence outweighs the tendency to prejudice the jury.

■ Similar safeguards are necessary where a defendant is tried for two or more offenses in one trial, for the prejudice to the defendant may be just as insidious and the temptation on the part of the prosecutors to cumulate the crimes may be just as great. The rule we adopt today is that offenses may be joined or indictments may be consolidated where the separate offenses show the defendant's unusual or distinctive *modus operandi.*

As Professor McCormick explains, a distinctive and unusual "modus operandi": appears where "crimes of the accused [are] so nearly identical in method as to earmark them as the handiwork of the accused." He adds a further clarification:

> Here much more is demanded then the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be so unusual or distinctive as to be like a signature.

McCormick on Evidence, § 190 at 449 (2d Ed.1972). The Commonwealth must show more than the other crimes are of the same class as the one for which the defendant is being tried. Rather, there must be such a high correlation in the details of the crimes that proof that the defendant committed one makes it very unlikely that anyone else but the defendant committed the others. *See, Commonwealth v. Fortune, supra.*

■ When we view the similarities in the two robberies in question, we are satisfied that joinder in the instant case was appropriate. Both of the offenses were robberies. Both of these robberies occurred in elevators which were located in adjoining buildings of the same housing project. In both of these robberies, the assailant first identified his victim while the victim was waiting for an elevator in the same building. The robberies took place only five days apart. The robberies occurred at or about the same time in the evening, between 6:30 and 7:00 p. m. The victim in each case was a woman accompanied by small children. In each robbery the assailant entered the elevator with the designated victim and remained on the elevator with that victim

until the other passengers had left the elevator. Both of the robberies were initiated at the eighth or ninth floor. In each case, the assailant announced that it was a holdup and demanded money from the victim. During each of the robberies, the assailant opened the clothing of the victim and searched their brassieres for any possible hidden money. After each robbery, the assailant escaped through the breezeway connection into an adjoining housing project.

The similarity in the timing, implementation and even the plan of escape of each robbery provides the distinctive and unusual *modus operandi* which would justify the conclusion that the perpetrator of one was the perpetrator of the other. It is difficult to conceive of any situation where the propriety of joinder could be clearer. We, therefore, affirm the learned trial court's ruling which permitted these robberies to be tried in a single trial.[6]

Judgments of sentence affirmed.

ROBERTS, J., filed a dissenting opinion.

ROBERTS, Justice, dissenting.

Although the majority holds that offenses may be joined for trial "where the separate offenses show the defendant's unusual or distinctive *modus operandi*," the majority misapplies its rule to the facts of this case. Manifestly lacking here is evidence that, in the words of Professor McCormick (quoted by the majority), "[t]he device used [is] so unusual and distinctive as to be like a signature." McCormick on Evidence § 190 at 449 (Cleary ed. 1972). As Judge Spaeth here observed, joined by Judge Hoffman and Judge (now President Judge) Cercone,

> "[i]n the first place, in significant respects the two robberies were dissimilar. On robber beat and threatened his victims, the other did not. One robber stole clothing, the other did not. One robber stopped the elevator between floors by pushing the emergency stop button, the

---

6. We have also considered the objection relating to an alleged prior written statement of Mrs. Rodgers and find it to be completely without merit.

other stopped it at a floor and apparently did not use the emergency button. One robber either had a weapon or feigned one, the other did not. In the second place, the similarities that did exist between the two robberies were just the sort of similarities as led to the comment in *Commonwealth v. Peterson*, [453 Pa. 187, 307 A.2d 264 (1975)], that '[a]rmed robbery is often a fungible commodity . . . .' Thus, if one thinks of robberies in an apartment complex, one will ask, what sort of victim would one expect any such robber to choose—women and children, or men of his own strength? Where would one expect such a robber to board the elevator—at the bottom, where he could wait until a suitable victim boarded, or on another floor, where he would have no control over who might board? In other words there was nothing so distinctive about the two robberies here 'as to be like a signature,' *McCormick, supra*, and thereby 'show that there is reasonable probability the same person committed both offenses,' *Commonwealth v. Peterson, supra*."

I dissent and would, like Judges Spaeth, Cercone, and Hoffman, hold that appellant's motion for separate trials should have been granted.