J-S43038-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| MARCUS J. DUGAS | |
| Appellant | No. 3451 EDA 2014 |

Appeal from the Judgment of Sentence August 29, 2014
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0001797-2013;
CP-45-CR-0001798-2013

BEFORE: GANTMAN, P.J., PANELLA, J., and OLSON, J.

MEMORANDUM BY GANTMAN, P.J.:        **FILED SEPTEMBER 09, 2015**

Appellant, Marcus J. Dugas, appeals from the judgment of sentence entered in the Monroe County Court of Common Pleas, following his jury trial convictions for one count each of aggravated assault, rape by forcible compulsion, involuntary deviate sexual intercourse ("IDSI"), recklessly endangering another person ("REAP"), burglary, unlawful restraint, false imprisonment, endangering the welfare of children ("EWOC"), and harassment, and two counts each of simple assault and terroristic threats.[1] We affirm.

The relevant facts and procedural history of this case are as follows.

---

[1] 18 Pa.C.S.A. §§ 2702(a)(1); 3121(a)(1); 3123(a)(1); 2705; 3502(a)(1); 2902(a)(1); 2903(a); 4304(a)(1); 2709(a)(1); 2701(a)(1); 2706(a)(1), respectively.

On June 15, 2013, L.V. reported a domestic disturbance to the police. L.V. told the responding officers that Appellant (her boyfriend) had grabbed her by the arm and brandished a knife at her after she refused to give him her car keys. L.V. reported that Appellant fled after learning the police were on the way. The officers told L.V. to call the police if Appellant returned to her apartment. L.V. and Appellant ended their relationship after this incident.

On July 5, 2013, L.V. filed a protection from abuse ("PFA") petition against Appellant, alleging that since the June 15, 2013 incident, Appellant had made a copy of L.V.'s house key, entered L.V.'s home without her permission, and threatened her. The court granted L.V. a temporary PFA order that day and entered a final PFA order on July 15, 2013.

On July 18, 2013, L.V. awoke at 11:00 p.m. to find Appellant standing over her bed, screaming, "Oh, I'm going to kill you." Appellant lifted L.V. from the bed and threw her to the ground. Appellant then began to choke L.V. until she lost consciousness. L.V. regained consciousness and attempted to flee her bedroom. The couple's four-year-old son, M.D., heard his mother screaming and attempted to run for help. Appellant threatened to beat M.D. if he did not return to his room. After M.D. went back to his room, Appellant dragged L.V. back into her bedroom and grabbed a knife. L.V. was able to gain control of the knife and throw it out of Appellant's reach. L.V. again attempted to flee, but Appellant stopped her and bit L.V. on the side of her face. In an effort to stop Appellant's attack, L.V. told

Appellant she wanted to continue their relationship. Appellant then performed oral sex on L.V. and had sexual intercourse with L.V. After Appellant fell asleep, L.V. fled from the apartment with the couple's two children. Police subsequently arrested Appellant at L.V.'s apartment.

Procedurally, at docket number CP-45-CR-0001797-2013 ("docket 1797"), the Commonwealth charged Appellant with simple assault, terroristic threats, and harassment, in connection with the incident on June 15, 2013. At docket number CP-45-CR-0001798-2013 ("docket 1798"), the Commonwealth charged Appellant with aggravated assault, rape by forcible compulsion, sexual assault, IDSI, indecent assault, REAP, burglary, kidnapping, terroristic threats, unlawful restraint, aggravated indecent assault without consent, simple assault, false imprisonment, EWOC, and corruption of minors, in connection with the incident on July 18, 2013.[2]

On August 19, 2013, the Commonwealth filed a notice of intent to join for trial the charges at docket 1797 and docket 1798. While Appellant was incarcerated awaiting trial on these charges, Appellant wrote L.V. a letter from prison, in violation of the PFA order. Appellant also wrote a letter to his mother urging her to convince L.V. to ask the Commonwealth to drop the charges against him. Consequently, the Commonwealth filed a third criminal

---

[2] The Commonwealth did not charge Appellant in relation to the events after June 15, 2013, and before July 5, 2013, which gave rise to entry of the PFA order.

information against Appellant, at docket number CP-45-CR-0002252-2013 ("docket 2252"), charging Appellant with two counts of intimidation of a witness or victim and one count of solicitation to intimidate a witness or victim. On October 25, 2013, the Commonwealth filed a notice of intent to join for trial the charges at docket 2252 with the charges at docket 1797 and docket 1798.

On November 4, 2013, Appellant filed an omnibus pre-trial motion to, *inter alia*, sever the charges at all docket numbers. Appellant filed a brief in support of his motion on January 21, 2014. On January 23, 2014, the Commonwealth filed a brief to support joinder of the charges. The court held a hearing on January 28, 2014. On February 12, 2014, the court denied Appellant's motion to sever and granted the Commonwealth's request to join the charges at all three docket numbers for trial.

Appellant proceeded to a jury trial on April 15, 2014.[3] The jury returned a verdict on April 16, 2014. At docket 1797, the jury convicted Appellant of all charges (simple assault, terroristic threats, and harassment). At docket 1798, the jury convicted Appellant of aggravated assault, rape by forcible compulsion, IDSI, REAP, burglary, terroristic threats, unlawful

---

[3] Prior to the close of the Commonwealth's case-in-chief, the court granted Appellant's motion to dismiss the kidnapping charge at docket 1798. The Commonwealth withdrew the charges of aggravated indecent assault without consent and corruption of minors at docket 1798; the Commonwealth also withdrew two charges at docket 2252.

restraint, simple assault, false imprisonment, and EWOC; the jury found Appellant not guilty of sexual assault or indecent assault at docket 1798. At docket 2252, the jury found Appellant not guilty of one count of intimidation of a witness.

On July 31, 2014, the court sentenced Appellant at docket 1797 to nine (9) to twenty-four (24) months' imprisonment for terroristic threats.[4] At docket 1798, the court sentenced Appellant to four and one-half (4½) to ten (10) years' imprisonment for aggravated assault; a consecutive term of five and one-half (5½) to ten (10) years' imprisonment for rape by forcible compulsion; a concurrent term of two and one-half (2½) to five (5) years' imprisonment for burglary; a concurrent term of six (6) to twelve (12) months' imprisonment for terroristic threats; a concurrent term of six (6) to twelve (12) months' imprisonment for unlawful restraint; and a concurrent term of one (1) to two (2) years' imprisonment for EWOC.[5] The court imposed Appellant's sentence at docket 1797 concurrent to his sentences at docket 1798. Thus, the court imposed an aggregate sentence of ten (10) to twenty (20) years' imprisonment.

On August 1, 2014, the Commonwealth timely filed a post-sentence

---

[4] The court determined the remaining convictions at docket 1797 merged for sentencing purposes.

[5] The court determined the remaining convictions at docket 1798 merged for sentencing purposes.

motion to modify Appellant's sentence, claiming the court's sentence was too lenient given the gravity of the offenses, aggravating circumstances, and the danger Appellant posed to the community. On Monday, August 11, 2014, Appellant timely filed a post-sentence motion challenging the sufficiency of the evidence and the legality of his sentence (claiming his sentences for aggravated assault and rape by forcible compulsion should have merged). The court held a hearing on the motions on August 29, 2014. During the hearing, the Commonwealth pointed out that Appellant's sentences for aggravated assault and rape by forcible compulsion carried minimum sentences which were not equal to half of the maximum sentences imposed. The court re-sentenced Appellant on that date to five and one-half (5½) to eleven (11) years' imprisonment for aggravated assault and four and one-half (4½) to nine (9) years' imprisonment for rape by forcible compulsion. The court did not alter the sentences for any of Appellant's other convictions. Thus, Appellant's aggregate sentence remained ten (10) to twenty (20) years' imprisonment.[6] The court said it would take Appellant's post-sentence motion under advisement.

On November 19, 2014, the court denied Appellant's post-sentence motion. Appellant timely filed a notice of appeal on December 12, 2014. On

_____

[6] The court did not expressly deny the Commonwealth's request for a stricter sentence, but the court declined to impose a harsher aggregate sentence than previously imposed.

December 24, 2014, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant complied.

Appellant raises the following issues for our review:

WHETHER THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN THE VERDICT OF:

A.   RAPE BY FORCIBLE COMPULSION [AND] INVOLUNTARY DEVIATE SEXUAL INTERCOURSE[?]

B.   AGGRAVATED ASSAULT?

C.   ENDANGERING THE WELFARE OF CHILDREN?

WHETHER THE TRIAL COURT ERRED IN DENYING [APPELLANT'S] MOTION TO SEVER?

WHETHER THE TRIAL COURT ERRED IN IMPOSING CONSECUTIVE SENTENCES FOR AGGRAVATED ASSAULT AND RAPE BY FORCIBLE COMPULSION?

(Appellant's Brief at 6).[7]

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinions of the Honorable Stephen M. Higgins, we conclude Appellant's first issue merits no relief. The trial court opinions comprehensively discuss and properly dispose of the question presented. (**See** Trial Court Opinion, filed January 30, 2015, at 3; Opinion in Support of Order Denying Appellant's Post-Sentence Motions, filed November 19, 2014, at 4-9) (finding: regarding Appellant's rape by forcible

_____

[7] For purposes of disposition, we have re-ordered Appellant's issues.

- 7 -

compulsion conviction, L.V. testified that on night of July 18, 2013, Appellant appeared in her bedroom, standing over her and screaming, "Oh, I'm going to kill you"; after several unsuccessful attempts to flee, L.V. pretended she wanted to continue her relationship with Appellant so he would stop attacking her; at one point, Appellant and L.V.'s four-year-old son heard L.V. screaming and woke up crying; Appellant told his son to get back in his room or Appellant would whoop him with belt; after child left, Appellant performed oral sex on L.V. and then had sexual intercourse with L.V.; L.V. testified that she feared Appellant would kill her if she tried to stop him; L.V. did not want to have sex with Appellant, but did so only out of fear; regarding Appellant's IDSI conviction, L.V. encountered Appellant in her bedroom while she was sleeping; L.V. testified that she had sex with Appellant and allowed Appellant to perform oral sex on her solely out of fear that Appellant would kill her if she refused his advances; regarding Appellant's aggravated assault conviction, L.V. testified that Appellant choked her until she almost passed out; when L.V. regained consciousness, her vision was blurry, she could not hear, and L.V. had difficulty standing; Appellant bit L.V.'s face when she attempted to leave; L.V. was swollen and had broken blood vessels in her face after Appellant's attack; Commonwealth introduced photographs depicting L.V.'s injuries; regarding Appellant's EWOC conviction, Appellant and L.V.'s four-year-old son awoke crying after hearing his mother scream during attack; L.V. instructed her son

to run and get help, but Appellant threatened to whoop his son with belt if he did not return to his room; Appellant also grabbed knife during this incident; Commonwealth presented sufficient evidence to sustain Appellant's convictions for rape by forcible compulsion, IDSI, aggravated assault, and EWOC). Accordingly, as to Appellant's first issue, we affirm on the basis of the trial court's opinions.

In his second issue, Appellant argues the Commonwealth sought joinder of his charges at docket 1797 and docket 1798 solely to show Appellant's propensity for violence. Appellant contends the incident on June 15, 2013, had no probative value relative to the charges stemming from the events on July 18, 2013, other than to show Appellant committed bad acts by assaulting L.V. on both of those dates. Appellant asserts joinder of the charges established only that Appellant is a violent man who assaulted L.V. on June 15, 2013, and acted in conformity with that character on July 18, 2013. Appellant claims the Commonwealth failed to meet its burden to demonstrate that the probative value of this "prior bad act" evidence outweighed the prejudice to his case. Appellant concludes the court abused its discretion by denying his motion to sever the charges at docket 1797 and docket 1798, and this Court should reverse and remand for separate trials at each docket.[8] We disagree.

_____

[8] Appellant does not challenge the joinder of the charges at docket 2252.

Our standard of review of the denial of a motion to sever is as follows: "Joinder and severance of separate indictments for trial is a discretionary function of the trial court; consequently, the trial court's decision is subject to review for abuse of that discretion." ***Commonwealth v. Brookins***, 10 A.3d 1251, 1255 (Pa.Super. 2010), *appeal denied*, 610 Pa. 625, 22 A.3d 1033 (2011).

> The traditional justification for permissible joinder of offenses or consolidation of indictments appears to be the judicial economy which results from a single trial. The argument against joinder or consolidation is that where a defendant is tried at one trial for several offenses, several kinds of prejudice may occur: (1) [t]he defendant may be confounded in presenting defenses, as where his defense to one charge is inconsistent with his defenses to the others; (2) the jury may use the evidence of one of the offenses to infer a criminal disposition and on the basis of that inference, convict the defendant of the other offenses; and (3) the jury may cumulate the evidence of the various offenses to find guilt when, if the evidence of each offense had been considered separately, it would not so find.

***Commonwealth v. Janda***, 14 A.3d 147, 155 (Pa.Super. 2011) (quoting ***Commonwealth v. Morris***, 493 Pa. 164, 171, 425 A.2d 715, 718 (1981)). "Thus[,] in arriving at a meaningful standard to guide the trial court in its exercise of discretion, and to permit appellate courts to determine whether the trial court abused this discretion, we must weigh the possibility of prejudice and injustice caused by the consolidation against the consideration of judicial economy." ***Id.***

Pennsylvania Rule of Criminal Procedure 582 provides, in pertinent part:

**Rule 582. Joinder—Trial of Separate Indictments or Informations**

**(A) Standards**

(1) Offenses charged in separate indictments or informations may be tried together if:

(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion; or

(b) the offenses charged are based on the same act or transaction.

Pa.R.Crim.P. 582(A)(1). Pennsylvania Rule of Criminal Procedure 583 provides:

**Rule 583. Severance of Offenses or Defendants**

The court may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together.

Pa.R.Crim.P. 583. "Under Rule 583, the prejudice the defendant suffers due to the joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime." *Commonwealth v. Dozzo*, 991 A.2d 898, 902 (Pa.Super. 2010), *appeal denied*, 607 Pa. 709, 5 A.3d 818 (2010).

The prejudice of which Rule 583 speaks is, rather, that which would occur if the evidence tended to convict the appellant only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence. Additionally, the admission of relevant evidence connecting a defendant to the crimes charged is a natural

consequence of a criminal trial, and it is not grounds for severance by itself.

*Id.* (quoting *Commonwealth v. Lauro*, 819 A.2d 100, 107 (Pa.Super. 2003), *appeal denied*, 574 Pa. 752, 830 A.2d 975 (2003)).

> Where the defendant moves to sever offenses not based on the same act or transaction…the court must therefore determine: (1) whether the evidence of each of the offenses would be admissible in a separate trial for the other; (2) whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, (3) whether the defendant will be unduly prejudiced by the consolidation of offenses.

*Dozzo, supra* at 902 (quoting *Commonwealth v. Collins*, 550 Pa. 46, 55, 703 A.2d 418, 422 (1997), *cert. denied*, 525 U.S. 1015, 119 S.Ct. 538, 142 L.Ed.2d 447 (1998)).  Thus, a court must first determine whether evidence of each of the offenses would be admissible in a separate trial for the other. *Dozzo, supra*.  Evidence of other crimes is not admissible solely to show the defendant's bad character or propensity to commit crimes.  *Id.*

> Nevertheless, evidence of other crimes is admissible to demonstrate:

> (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial, in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other.

*Janda, supra* at 156 (quoting *Morris, supra* at 175, 425 A.2d at 720).

"Additionally, evidence of other crimes may be admitted where such

evidence is part of the history of the case and forms part of the natural development of the facts." **Dozzo, supra** at 902 (quoting **Collins, supra** at 55, 703 A.2d at 423). **See also Commonwealth v. Thomas**, 879 A.2d 246 (Pa.Super. 2005), *appeal denied*, 605 Pa. 685, 989 A.2d 917 (2010) (holding court properly granted Commonwealth's motion to consolidate charges resulting from defendant's domestic dispute with his girlfriend at their home on March 23, 2001, with charges following another domestic dispute between defendant and his girlfriend on April 19, 2001; second assault occurred on day defendant was released from jail, after victim had refused to testify against him at hearing on first assault; evidence of each assault would be admissible in prosecution for other, as evidence constitutes chain or sequence of events that formed history of case and is part of natural development of case; jury was capable of separating evidence into different incidents on different days that gave rise to different crimes; evidence of defendant's relationship with victim was admissible to prove motive, malice, ill-will, and complete story of their relationship; defendant did not suffer undue prejudice as result of consolidation of offenses for trial).

Instantly, in denying Appellant's request for severance of the charges at each docket, the trial court stated: "Pursuant to prevailing Pennsylvania case law, evidence of each offense would be admissible in prosecution for the other, the evidence is separable by a jury, and there is no showing of undue prejudice to [Appellant]. **See** [*id.*]. As such, [Appellant's] Motion is

- 13 -

DENIED." (Order Denying Appellant's Motion to Sever, 2/12/14, at 1). We see no reason to disrupt the court's ruling. **See Brookins, supra**. Appellant's actions showed an escalating pattern of abuse. L.V. refused to give Appellant her car keys on June 15, 2013, and Appellant responded by grabbing her arm and threatening her with a knife. Appellant fled after L.V. called the police. L.V. subsequently obtained a PFA order against Appellant after Appellant had made a copy of L.V.'s house key, entered L.V.'s home without her permission, and threatened her. Appellant violated the PFA order when he broke into L.V.'s home on July 18, 2013, choked her until she passed out, attacked and assaulted L.V., and threatened to kill her. Appellant's actions on June 15, 2013 and July 18, 2013, respectively, would constitute admissible evidence in each case if the court had conducted separate trials, where the crimes from each incident demonstrate a sequence of events that formed the history and natural development of the case. **See** Pa.R.Crim.P. 582; **Dozzo, supra**; **Thomas, supra**. Additionally, evidence of Appellant's relationship with L.V. was admissible to prove Appellant's motive, malice, and ill-will toward L.V., and to develop the complete story of their relationship. **See id.** Further, the jury found Appellant not guilty of indecent assault and sexual assault at docket 1798, and acquitted Appellant of intimidation of a witness at docket 2252, demonstrating that the jury was capable of separating the charges at all three dockets and did not cumulate the evidence. **See** Pa.R.Crim.P. 582;

***Dozzo, supra***. Thus, Appellant's second issue warrants no relief. ***See Janda, supra***; ***Dozzo, supra***.

In his third issue, Appellant argues the aggravated assault and rape by forcible compulsion convictions were part of the same offense because the crime of aggravated assault constituted evidence of forcible compulsion necessary to prove the crime of rape. Appellant asserts the court erred by imposing consecutive sentences for aggravated assault and rape by forcible compulsion because the sentences for these convictions should have merged. Appellant concludes this Court must vacate and remand for re-sentencing.[9] We disagree.

"Whether [a defendant's] convictions merge for sentencing is a question implicating the legality of [his] sentence. Consequently, our standard of review is *de novo* and the scope of our review is plenary." ***Commonwealth v. Baldwin***, 604 Pa. 34, 38, 985 A.2d 830, 833 (2009).

Section 9765 provides:

> **§ 9765. Merger of sentences**
>
> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

_____

[9] Notwithstanding the phrasing of Appellant's third question presented, Appellant challenges only the legality of his sentence; he does not claim the court abused its discretionary sentencing authority.

42 Pa.C.S.A. § 9765.

> The statute's mandate is clear. It prohibits merger unless two distinct facts are present: 1) the crimes arise from a single criminal act; and 2) all of the statutory elements of one of the offenses are included in the statutory elements of the other.

*Baldwin, supra* at 38-39, 985 A.2d at 833. In other words: "If two crimes each require proof of at least one element that the other does not, then the crimes are not greater and lesser included offenses, and therefore the sentences do not merge." *Thomas, supra* at 263.

The Crimes Code defines the offenses of aggravated assault and rape by forcible compulsion, in relevant part, as follows:

> **§ 2702. Aggravated assault**
>
> **(a) Offense defined.**—A person is guilty of aggravated assault if he:
>
> (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly, or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

18 Pa.C.S.A. § 2702(a)(1).

> **§ 3121. Rape**
>
> **(a) Offense defined.**—A person commits a felony of the first degree when the person engages in sexual intercourse with a complainant:
>
> (1) By forcible compulsion.

18 Pa.C.S.A. § 3121(a)(1).

Instantly, aggravated assault under subsection (a)(1) requires the

element of causing or attempting to cause serious bodily injury; rape by forcible compulsion does not require serious bodily injury or an attempt to cause serious bodily injury. Additionally, rape by forcible compulsion requires sexual intercourse, which aggravated assault does not. **Compare** 18 Pa.C.S.A. §§ 2702(a)(1), 3121(a)(1). Because aggravated assault under subsection (a)(1) and rape by forcible compulsion involve at least one separate element the other does not, the court correctly imposed separate sentences for those crimes. **See Baldwin, supra**; **Thomas, supra**.[10] Therefore, Appellant's third issue merits no relief. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_
Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/9/2015

_____

[10] Appellant relies on this Court's decision in **Commonwealth v. Sanders**, 489 A.2d 207 (Pa.Super. 1985) (holding defendant's convictions for aggravated assault and REAP merged for sentencing purposes with defendant's rape by forcible compulsion conviction where crimes arose from same criminal incident and evidence of aggravated assault and REAP constituted evidence of forcible compulsion necessary to prove rape). Nevertheless, this Court decided **Sanders** before the legislature enacted the pure elements-based merger statute under Section 9765. Thus, **Sanders** is not dispositive of the present case.

## COURT OF COMMON PLEAS OF MONROE COUNTY
## FORTY-THIRD JUDICIAL DISTRICT
## COMMONWEALTH OF PENNSYLVANIA

| | | |
|---|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** | : | **NO. 1797 CR 2013** |
| | : | **1798 CR 2013** |
| **vs.** | : | |
| | : | |
| **MARCUS DUGAS,** | : | |
| | : | |
| **Defendant** | : | |
| | : | |

## STATEMENT PURSUANT TO Pa.R.A.P. 1925(a)

The matter concerns Defendant Marcus Dugas' appeal to the Pennsylvania Superior Court of various issues following his conviction after jury trial.

On April 16, 2013, a Monroe County Jury found Defendant guilty of terroristic threats, simple assault, harassment on docket number 1797 CR 2013; and Defendant was found guilty of aggravated assault, rape by forcible compulsion, involuntary deviate sexual intercourse, recklessly endangering another person, burglary, terroristic threats, unlawful restraint/serious bodily injury, simple assault, false imprisonment and endangering welfare of child on docket number 1798 CR 2013. At docket 1797 CR 2013, this Court sentenced Defendant to a term of imprisonment period of nine months to twenty-four months in a state correctional facility on the conviction of terroristic threats, with the sentence to run concurrent with the sentence imposed at 1798 CR 2013. The



9

charges of simple assault and harassment merged for the purpose of sentencing and therefore no sentence was imposed.

At docket 1797 CR 2013, this Court sentenced Defendant to a term of imprisonment period of 54 months to 120 months in a state correctional facility on the conviction of aggravated assault. On the charge of rape by forcible compulsion, this Court sentenced Defendant to a term of imprisonment to period of 66 months to 120 months, to run consecutive to the sentence for aggravated assault[1]. For the burglary charge, we sentenced Defendant to a term of imprisonment to period of 30 months to 60 months, to run concurrent to the sentences for aggravated assault and rape by forcible compulsion. On the charge of terroristic threats, this Court sentenced Defendant to a term of imprisonment to period of 6 months to 12 months, to run concurrent to the other sentences imposed at 1798 CR 2103. On the charge of unlawful restraint serious bodily injury, we sentenced Defendant to a term of imprisonment to period of 6 months to 12 months, to run concurrent to the other sentences imposed at 1798 CR 2103. For the endangering welfare of child, we sentenced Defendant to a term of imprisonment to period of 12 months to 24 months, to run concurrent to the other sentences imposed at 1798 CR 2103. As to the charges of involuntary deviate sexual assault, recklessly endangering another person, simple assault and false imprisonment, we determined that for sentencing purposes these charges merge and, therefore, no sentence was imposed.

---

[1] On August 29, 2014, we granted the Commonwealth's Post Sentence Motion to Modify Sentence and corrected the sentence on aggravated assault to 54 to 108 months and on the rape by forcible compulsion to 66 to 132 months resulting in an aggregate of 120 to 240 months.

Thereafter, Defendant filed Post-Sentence Motions which were denied by Opinion and Order dated November 19, 2014. On December 12, 2014, Defendant filed an Appeal to the Pennsylvania Superior Court.

In our November 19, 2014, Opinion and Order we specifically set forth our reasons for denying Defendant's Post-Sentence Motions. All of Defendant's issued complained of on appeal have been addressed in our Opinion. Therefore, pursuant to Pa. R.C.P. 1925(a), we find that northing further needs to be determined.

**BY THE COURT:**

**STEPHEN M. HIGGINS, J.**

cc:     Michael Rakaczewski, Esquire, ADA
        Donald M. Leeth, Esquire
        Prothonotary-Superior Court

2015 JAN 30 PM 4 24

MONROE COUNTY, PA

CLERK OF COURTS

## COURT OF COMMON PLEAS OF MONROE COUNTY
## FORTY-THIRD JUDICIAL DISTRICT
## COMMONWEALTH OF PENNSYLVANIA

COMMONWEALTH OF     : NO.   1798 CR 2013
PENNSYLVANIA       :      1797 CR 2013
           :
    vs.        :
           :
MARCUS JULIEN DUGAS,    :
           :
   Defendant      :
           : POST SENTENCE MOTIONS

### OPINION

Defendant Marcus Julien Dugas ("Defendant") filed Post-Sentencing

Motions seeking to overturn his jury conviction or, in the alternative, Defendant

requests this Court grant a new trial. The procedural background in this case is as

follows. On August 21, 2103, a Criminal Information in case docketed at number

1797 CR 2013 was filed charging Defendant with the following, related to an

incident occurring on June 15, 2013:

   1.   Terroristic Threats [M1], pursuant to 18 Pa. C.S. § 2706 (a)(1);
   2.   Simple Assault [M2], pursuant to 18 Pa. C.S. § 2701 (a)(1); and
   3.   Harassment [S], pursuant to 75 Pa. C.S. § 2709 (a)(1).

On that same date, a Criminal Information in case docketed at number 1798 CR 2013

was filed charging Defendant with the following, related to an incident occurring on

July 19, 2013:



1

6

1. Aggravated Assault [F1], pursuant to 18 Pa. C.S. § 2702(a)(1);
2. Rape Forcible Compulsion [F1], pursuant to 18 Pa. C.S. § 3121 (a)(1);
3. Sexual Assault [F2], pursuant to 18 Pa. C.S. § 3124.1;
4. Involuntary Deviate Sexual Intercourse Forcible Compulsion [F1], pursuant to 18 Pa. C.S. § 3123 (a)(1);
5. Indecent Assault Forcible Compulsion [F1], pursuant to 18 Pa. C.S. § 3126 (a)(2);
6. Recklessly Endangering Another Person [M2], pursuant to 18 Pa. C.S. § 2705;
7. Burglary Overnight Accommodation, Persons Present [F1], pursuant to 18 Pa. C.S. § 3502 (a)(1);
8. Kidnap to Facilitate a Felony [F1], pursuant to 18 Pa. C.S. § 2901 (a)(2);
9. Terroristic Threats With Intent to Terrorize Another [M1], pursuant to 18 Pa. C.S. § 2706 (a)(1);
10. Unlawful Restraint/Serious Bodily Injury [F2], pursuant to 18 Pa. C.S. § 2902 (a)(1);
11. Aggravated Indecent Assault Without Consent [F2], pursuant to 18 Pa. C.S. § 3125 (a)(1);
12. Simple Assault [M2], pursuant to 18 Pa. C.S. § 2701 (a)(1);
13. False Imprisonment [M2], pursuant to 18 Pa. C.S. § 2903 (a);
14. Endangering Welfare of Children-Parent/Guardian [M1], pursuant to 18 Pa. C.S. § 4304(a)(1); and
15. Corruption of Minors [S], pursuant to 75 Pa. C.S. § 6301(a)(1)(i).

On October 25, 2103, a Criminal Information in case docketed at number 2252 CR 2013 was filed charging Defendant with the following, related to an incident occurring on August 2, 2013:

1. Intimidating Witness/Victim False/Misleading Testimony [F1], pursuant to 18 Pa. C.S. § 902 (a);
2. Intimidating Witness/Victim False/Misleading Testimony [F1], pursuant to 18 Pa. C.S. § 4952 (a)(2); and
3. Intimidating Witness/Victim-Withhold Testimony [F1], pursuant to 18 Pa. C.S. § 4952 (a)(3).

2

On October 3, 2013, the Commonwealth filed Notice Pursuant to Pa. R. Crim. P. 582 (B)(1) that the above three docketed cases would be joined for the purposes of trial.

A single jury trial was held on April 15, 2014, after which, at docket number 1798 CR 2013, Defendant was convicted of the following: Aggravated Assault; Rape Forcible Compulsion; Involuntary Deviate Sexual Intercourse; Recklessly Endangering Another Person; Burglary; Terroristic Threats; Unlawful Restraint/Serious Bodily Injury; Simple Assault; False Imprisonment; and Endangering Welfare of Children. On that same date, at docket number 1797 CR 2013, Defendant was found guilty of Terroristic Threats, Simple Assault and Harassment. Defendant was found not guilty of all other charges, including the charges filed at docket 2252 CR 2013.

On July 31, 2014, this Court imposed a total aggregate sentence on Defendant of not less than 120 months nor more than 240 months[1] to be served in a State Correctional Institution. Thereafter, on August 1, 2014, the Commonwealth filed Post Sentence Motions to Modify Sentence, seeking to increase the sentence imposed on Defendant. On August 11, 2014, Defendant filed Post-Sentence Motion ("Motion") seeking to arrest the judgment against him, or in the alternative, a new trial. In addition, Defendant also sought reconsideration of his sentence. During our hearing, held on August 29, 2014, we granted the Commonwealth's Post Sentence Motion to Modify Sentence and denied Defendant's Reconsideration of Sentence. In granting the Commonwealth's Motion, we modified Defendant's sentence merely to

---

[1] This Court's original sentence imposed upon Defendant was 66 to 120 months for the Aggravated Assault and 54 to 120 months consecutive on Rape by Forcible Compulsion.

3

correct the sentence imposed on the Aggravated Assault from 66 to 120 months to 66 months to 132 months; and on the Rape by Forcible Compulsion from 60 to 120 months to 54 to 108 months, for a total aggregate sentence of 120 to 240 months, consistent with the original sentence imposed on the Defendant. We are now prepared to dispose of Defendant's Motion.

Defendant seeks an arrest of judgment in his case because he claims that the evidence was insufficient to convict him of Rape by Forcible Compulsion, Involuntary Deviate Sexual Intercourse, Aggravated Assault and Endangering the Welfare of a Child. The test for determining the sufficiency of the evidence is whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, the evidence and all reasonable inferences therefrom support the jury's finding of guilt beyond a reasonable doubt. *Commonwealth v. Syre*, 489 A.2d 1340, 1342 (Pa. 1985). Our function is to determine whether the evidence is sufficient to permit a jury to determine that each and every element of the crimes charged has been established beyond a reasonable doubt. *Commonwealth v. Feathers*, 660 A.2d 90 (Pa. Super. 1995) (citation omitted). "The facts and circumstances established by the Commonwealth 'need not be absolutely incompatible with the Defendant's innocence, but the question of any doubt is for the jury unless the evidence is so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances.'" Id, (citations omitted).

A review of the record indicates that the evidence was sufficient to support a conviction for Rape by Forcible Compulsion. Pursuant to § 3121 (a)(1), "[a]

4

person commits a felony of the first degree when the person engages in sexual intercourse with a complainant: (1) [b]y forcible compulsion." L.N. , the victim and ex-girlfriend of Defendant, testified that on the night of July 18, 2013, the Defendant appeared in her bedroom. [Notes of Testimony, April 15, 2014, at p. 34 (hereinafter "N.T.")] L.V. awoke to find Defendant standing over her screaming "Oh, I'm going to kill you." [N.T., p. 34] After several attempts to flee the situation, L.V. realized that she was making the situation worse. [N.T., p. 35-38] She then decided to make Defendant believe that she still wanted to be with him so that he would stop hurting her. [N.T., p. 38] At one point, the parties' young son, M.D. Jr., age 4, heard his mother screaming and he woke up crying. [N.T., p. 36] Defendant then told his son to get back in his room or he would whoop him with the belt. [N.T., p. 36] After M.D. returned to his room, Defendant and L.V. went back into her bedroom when Defendant performed oral sex on her. [N.T., p. 39] Defendant proceeded to have sex with L.V. [N.T., p. 39] L.V. testified that she feared that if she tried to stop Defendant he would kill her. [N.T., p. 39]

Defendant argues that this testimony did not demonstrate that L.V. involuntarily submitted to sexual intercourse. Defendant argues that he engaged in sexual intercourse with L.V.'s consent. Viewing the above evidence in the light most favorable to the Commonwealth, we find that L.V.'s testimony shows that she feared that if she tried to stop Defendant from having sexual intercourse with her, he would kill her. The victim testified that she did not want to have sex with Defendant; however, she feared that the Defendant

5

would harm or kill her if he learned that she was pretending to continue their relationship. [N.T., p. 39]

We find the evidence is sufficient to demonstrate that Defendant engaged in sexual intercourse by forcible compulsion. The jury heard the evidence and determined that Defendant was guilty of Rape by Forcible Compulsion. Therefore, Defendant's Motion for Arrest of Judgment and Motion for New Trial based on insufficient evidence for his conviction of Rape by Forcible Compulsion is denied.

Defendant also challenges his conviction for IDSI on the basis that the evidence was insufficient. "A person commits a felony of the first degree when the person engages in deviate sexual intercourse with a complainant: (1) by forcible compulsion." 18 Pa. C.S.A.§ 3123 (a)(1). "The crime of involuntary deviate sexual intercourse occurs when the actor, by physical compulsion or threats thereof, coerces the victim to engage in acts of anal and/or oral intercourse." *Commonwealth v. Snyder*, 870 A.2d. 336, 351 (Pa. Super. 2005) (citation omitted). As we have set forth above, L.V. encountered Defendant in her bedroom while she was sleeping. [N.T., p. 34] L.V. stated that she was compelled to have sexual relations with Defendant because she feared that Defendant would harm or kill her if she did not allow it. [N.T., p. 39] The victim testified that she was afraid to do anything that looked suspicious to Defendant. [N.T., p. 41] The testimony included L.V.'s statements that Defendant performed oral sex on her [N.T., p.39] and that she was scared to call the cops. [N.T., p. 41]

Viewing this evidence in the light most favorable to the Commonwealth as the verdict winner, we find that there is sufficient evidence to enable the fact-finder

6

to find every element of IDSI. L.V. stated that she felt forced to allow Defendant to perform oral sex on her or he would kill her. We find that the evidence is sufficient to sustain the verdict, therefore, Defendant's Motion for Arrest of Judgment and Motion for New Trial based on insufficient evidence for his conviction under IDSI is denied.

Next, Defendant contends that the evidence submitted at trial was insufficient to convict him of Aggravated Assault. 18 Pa. C.S.A §2702 (a)(1), states that "[a] person is guilty of aggravated assault if he: (1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life."

At trial, L.V. testified that on the evening of July 18, 2013, and into the early morning of July 19, 2013, Defendant had both of his hands around her throat and choked her until she almost passed out. [N.T., p. 34-35] L.V. stated that she woke up and everything was blurry and she couldn't hear out if her ears. [N.T., p. 35] L.V. was dizzy and she had difficulty getting up. [N.T., p. 35] Defendant bit her face when L.V. attempted to leave the apartment. [N.T., p. 37] The morning after the attack, L.V. looked into the mirror and realized that there were red patches around her eyes; it looked like blood vessels popped around her eyes; and her face was swollen. [N.T., p. 40] The Commonwealth introduced photographs containing these injuries.

This testimony is disturbing. The jury heard this testimony, saw the photographs and found Defendant was guilty of Aggravated Assault. We find there is more than sufficient evidence to show that Defendant caused L.V. serious

7

bodily injury. Defendant not only choked L.V. until she was passing out, he caused serious physical manifestations of the bodily injury which, under the circumstances, clearly demonstrates extreme indifference to the value of human life. In addition, Defendant bit L.V. on her face. L.V. had many physical injuries which the jury found was sufficient evidence to support Defendant's conviction of Aggravated Assault. Accordingly, upon viewing this evidence in the light most favorable to the Commonwealth as the verdict winner, we find that there is sufficient evidence to support Defendant's conviction of Aggravated Assault.

Finally, Defendant challenges the sufficiency of the evidence for his conviction of endangering the welfare of children. "A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa. C.S.A. §4304 (a)(1). The testimony at trial indicated that Defendant was very loud during his altercation with L.V. At one point, Defendant grabbed her by the hair and he was dragging L.V. back into her bedroom, M.D. , Jr. woke up. [N.T., p. 36] The parties' son was only 4 years old at the time of the altercation. M.D. heard his mother screaming for help and he woke up crying. [N.T., p. 36] . L.V. then told M.D. to run and get help, however, Defendant told his son to get back in his room or he would whoop him with the belt. [N.T., p. 36] M.D. went back to his room and he just cried. [N.T., p. 36]

M.D. was so overwhelmed by the incident that he did not want to go to sleep.

8

[N.T., p. 39]    L⋅V⋅   also stated at one point Defendant grabbed a knife when they were back in the room. [N.T., p. 36]

Viewing this evidence in the light most favorable to the Commonwealth as verdict winner, we find that there is sufficient evidence to enable the fact-finder to find every element of the crime of Endangering Welfare of a Child. The jury heard evidence that Defendant had a knife and that   L⋅V⋅   threw it to where Defendant couldn't reach it. [N.T., p. 36] The physical altercation with L⋅V⋅ was done in from of   M⋅D⋅, and Defendant threatened him if he didn't go back into his room. [N.T., p. 36] We find this evidence is sufficient to sustain Defendant's conviction of the crime of Endangering Welfare of a Child. Accordingly, Defendant's Motion for Arrest of Judgment and Motion for New Trial based on insufficient evidence is denied.

Defendant also contends that the verdict is flawed and inconsistent inasmuch as the jury acquitted the Defendant of Sexual Assault and Indecent Assault by Forcible Compulsion. [Defendant's Motion, ¶1(c)] A consistency verdict is not required. *Commonwealth v. Miller*, 613 Pa. 584, 595, 35 A.3d 1206, 1213 (Pa. 2012). An inconsistent verdict is allowed "to stand so long as the evidence is sufficient to support the conviction." *Id*, 613 Pa. at 588, 35 A.3d at 1208 (citation omitted). The *Miller* Court recognized that while "the jury's verdict appears to be inconsistent, we refuse to inquire into or to speculate upon the nature of the jury's deliberations or the rationale behind the jury's decision." *Id*, 613 Pa. at 596, 35 A.3d at 1213. Since we have determined that the evidence is sufficient to support the

9

Circulated 08/13/2015 11:26 AM

conviction, we find no merit in Defendant's argument. In light of the foregoing, we enter the following order.

10

COURT OF COMMON PLEAS OF MONROE COUNTY
FORTY-THIRD JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

COMMONWEALTH OF
PENNSYLVANIA

vs.

MARCUS JULIEN DUGAS,

Defendant

: NO.    1798 CR 2013
:           1797 CR 2013
:
:
:
:
:
:
:
: POST SENTENCE MOTIONS

## O R D E R

AND NOW, this ____19th____ day of November 2014, based upon the

foregoing, it is hereby **ORDERED** that Defendant's Post-Sentence Motions are

**DENIED.**

BY THE COURT:

_____
STEPHEN M. HIGGINS, Judge

cc:    ADA, MR
       Donald Leeth, Esquire

11

COURT OF COMMON PLEAS OF MONROE COUNTY
43rd JUDICIAL DISTRICT
COMMONWEALTH OF PENNSYLVANIA

Commonwealth of PA:                          NO. 1798 CR 2013
            Vs                               1797 CR 2013
Marcus Julien Dugas


AFFIDAVIT OF SERVICE - Opinion
I, Susan DeBoer, depose and say that the attached Notice and Order was served
in the following manner on November 19, 2014


Parties:

_Charlene V Dugas_ _11/19/14_ District Attorney

_Ann M. Bayer_ Donald Leeth, Esq.


_Susan DeBoer_
Susan DeBoer