J-A15032-23

2023 PA Super 194

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| SETH LOUIS HAMILTON | : | |
| Appellant | : | No. 1141 WDA 2022 |

Appeal from the PCRA Order Entered September 8, 2022
In the Court of Common Pleas of Mercer County Criminal Division at
No(s):  CP-43-CR-0001881-2017

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| v. | : | |
| SETH LOUIS HAMILTON | : | |
| Appellant | : | No. 1142 WDA 2022 |

Appeal from the PCRA Order Entered September 8, 2022
In the Court of Common Pleas of Mercer County Criminal Division at
No(s):  CP-43-CR-0001277-2018

BEFORE:  MURRAY, J., McLAUGHLIN, J., and PELLEGRINI, J.*

OPINION BY PELLEGRINI, J.:                    **FILED: OCTOBER 2, 2023**

Seth Louis Hamilton (Hamilton) appeals from the order of the Court of Common Pleas of Mercer County (PCRA court) granting in part and denying in part his petition filed pursuant to the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. § 9541-9546.  He argues that the PCRA court erred in finding that

_____

* Retired Senior Judge assigned to the Superior Court.

counsel was not ineffective. We agree, as we conclude counsel was ineffective for failing to object to the Commonwealth's motion for joinder resulting in the admission of irrelevant evidence. We, therefore, reverse the PCRA court's order denying relief and remand for a new trial.

## I.

## A.

On direct review, we adopted the following summary of the underlying facts:

On the evening of October 25, 2017, three young men conspired to rob [Hamilton]. The motive for the robbery was a debt [Hamilton] owed to one of the co-conspirators, Zachary Cutshall [(Cutshall)]. Under the guise of giving [Hamilton] a ride to Greenville, Pennsylvania[,] to purchase marijuana, [the second co-conspirator,] Jacob Barger [(Barger),] stopped the vehicle in a remote location on Delaware [R]oad in Mercer County, Pennsylvania. Barger and the third co-conspirator, Dominic Heasley [(Heasley)], then exited the vehicle using the excuse [that] they had to urinate.

Upon [Barger and Heasley's return] to the vehicle, [Cutshall] pulled out what was later determined to be a BB pistol and robbed Hamilton. [Cutshall] and [Hamilton were seated] in the back seat of the vehicle. Cutshall [was] on the passenger side and [Hamilton was] on the driver['s] side. Due to the fact [that] it was night[time], and the fact [that] the BB pistol looked like a real handgun, [Hamilton] complied with Cutshall's demand to hand over his personal property, which included his wallet, cell phone, and a drawstring bag that contained a small amount of marijuana and some drug paraphernalia. Cutshall then ordered [Hamilton] to get out of the vehicle.

Unbeknownst to the three co-conspirators, [Hamilton] had a real handgun in his possession at the time of the robbery. Coincidentally, he had stolen this handgun out of an unlocked pick-up truck the day before the robbery. When he got out of the vehicle, [Hamilton] asked Barger whether he knew about the

conspiracy. Barger acknowledged he did. [Hamilton] then pulled the handgun out of his waistband and, while holding the passenger door open, fired the handgun at [Cutshall] approximately five times. One round fatally struck Cutshall in the neck area.

[Hamilton] then proceeded to the rear of the vehicle and fired more rounds through the back window. One of these rounds penetrated the front passenger seat and struck [Heasley] in the shoulder. [Hamilton] then fled into the woods. However, he later met up Barger, Heasley, and the now[-]deceased Cutshall[] at the parking lot for Vaughn Chiropractic[,] where Barger had moved the vehicle. [Hamilton] remained there with them despite knowing that Heasley had placed a 911 call. The Pennsylvania State Police found the four of them at the site.

(**Commonwealth v. Hamilton**, 2020 WL 5423944, unpublished memorandum, at *1-2 (Pa. Super., filed Sep. 10, 2020) (quoting Trial Court Opinion, 12/30/19, at 1-2 (pagination provided)).

**B.**

Charges related to the shootings were docketed at CP-43-CR-0001881-2017, while charges with respect to the stealing of the gun used in the shootings were docketed at CP-43-CR-0001277-2018. On the Friday before *voir dire* was scheduled to begin in the shooting case, which was scheduled to begin the following Monday, the Commonwealth filed a motion to join each of the underlying cases, arguing that joinder would not unfairly prejudice Hamilton, would promote judicial economy and eliminate the need for separate trials. (**See** Joinder Motion, 4/05/19, at ¶¶ 9, 11-12).

The Commonwealth maintained that several facts supported joinder. Specifically, the events concerning the cases occurred over a five-day period (October 22-26, 2017); both cases revolved around the same piece of

evidence (*i.e.*, the gun that was alleged to have been stolen in the one case was allegedly used in the other case); Hamilton met the victims of the shooting case at the home of his co-conspirator from the gun theft case; and multiple witnesses would be called to testify in both cases (specifically, the co-conspirator from the gun case, the shooting victims and any witnesses that would identify and address the operability of the stolen gun). (**See** Joinder Motion, at ¶¶ 4, 6-8). The trial court granted the Commonwealth's motion. (**See** Order, 4/05/19 at 1).

Trial was held on April 9-12, 2019. Of the 16 trial witnesses, only two testified about the theft offense. The issue before the jury was whether Hamilton shot Cutshall with malice or whether he was justified in doing so in self-defense. (**See** N.T. PCRA Hearing, 4/22/22, at 43, 47). During his opening statement, the prosecutor referred to Hamilton as a thief and repeatedly used the term "stole" or "stolen" 15 times before calling any witnesses. (**See id.** at 13-24). The Commonwealth did not dispute that Hamilton was the victim of a robbery plot by Cutshall and his associates. (**See** N.T. Trial Vol. I, at 19).

At the conclusion of trial, the jury acquitted Hamilton of murder and possession with intent to deliver.[1] It convicted him of two counts each of

---

[1] **See** 18 Pa.C.S. § 2502(a), 901(a), 2502(c); 35 P.S. § 780-113(a)(30), respectively.

aggravated assault with a deadly weapon, theft by receiving stolen property, and criminal conspiracy; and one count each of aggravated assault, criminal attempt, firearms not to be carried without a license, tampering with or fabricating physical evidence, theft from a motor vehicle, criminal conspiracy, theft by unlawful taking, possession of a small amount of marijuana, and possession of drug paraphernalia.[2] At a deferred sentencing hearing, the trial court imposed an aggregate term of 15 to 30 years' imprisonment, followed by 37 months of probation.[3] (*See* Sentencing Order, 9/26/19 at 2-5); (Amended Sentencing Order, 10/01/19 at 1). On September 10, 2020, this Court affirmed the judgments of sentence.[4] (*See Commonwealth v.*

_____

[2] 18 Pa.C.S. §§ 2702(a)(4), 3925(a), 903(a)(1), 2702(a)(1), 901(a), 6106(a)(1), 4910(1), 3934(a), 3921(a); 35 P.S. § 780-113(a)(31), (32), respectively.

[3] The aggregate term included consecutive prison terms of 72 to 144 months for aggravated assault, 54 to 108 months for criminal attempt to commit aggravated assault, 13 to 26 months for aggravated assault with a deadly weapon, 13 to 26 months for aggravated assault with a deadly weapon, 16 to 32 months for theft by receiving stolen property, and 12 to 24 months for firearms not to be carried without a license. The term also included consecutive probation terms of two years for tampering with or fabricating physical evidence, one year for possession of drug paraphernalia, and one month for possession of a small amount of marijuana. Sentencing Order, 9/26/19, 2-5; Amended Sentencing Order, 10/1/19, 1.

[4] On direct appeal, Hamilton challenged: (1) the trial court's reading of the Commonwealth's requested jury instruction related to the defense of justification; (2-3) the trial court's denial of his requested jury instructions regarding the defense of justification; (4) the trial court's denial of his requested jury instruction regarding the voluntariness of his confession to police; (5) the trial court's reading of the Commonwealth's requested jury
*(Footnote Continued Next Page)*

*Hamilton*, 240 A.3d 916 (Pa. Super. filed Sept. 10, 2020) (unpublished memorandum)). On May 17, 2021, our Supreme Court denied further review. (*See Commonwealth v. Hamilton*, 253 A.3d 674 (Pa. 2021)).

**C.**

With the assistance of present counsel, Hamilton filed a timely PCRA petition in which he claimed that trial counsel provided ineffective assistance by: (1) not contesting the Commonwealth's joinder motion; (2) not objecting to instances of alleged prosecutorial misconduct based on the trial prosecutor's opening and closing remarks; (3) not objecting to the jury verdict sheet; (4) not objecting to the charging of multiple counts of theft by receiving stolen property; and (5) not objecting to the charging of multiple counts of conspiracy in the gun theft case. (*See* PCRA Petition, 3/11/22, at 31-54). The PCRA court granted an evidentiary hearing, at which Hamilton's trial counsel testified.[5]

Trial counsel testified that he agreed to joinder because he believed that the evidence for the theft case "was probably going to come in anyway one way or the other" and the Commonwealth could satisfy the test for joinder. (N.T. PCRA Hearing, 4/24/22, at 21, 38). Trial counsel also wanted to avoid

---

instructions which described the elements of first-degree murder and aggravated assault; and (6) the discretionary aspects of his sentence. *Hamilton*, 2020 WL 5423944, at *2-5.

[5] The trial court and PCRA court are the same jurist in this matter.

a delay of the homicide trial because the prosecutor told him that if he did not agree to the joinder motion, it would try the "pretty strong" theft case first. (*Id.* at 21); (*see id.* at 22). Trial counsel also believed that the evidence of the theft would be admissible for *res gestae* purposes. (*Id.* at 21) (". . . so I felt that the Judge would probably let that in as part of the history of the crime.").

He also agreed with the prosecutor's suggestion that joinder was prudent because the jury being instructed on justification (self-defense) "may have helped the theft case." (*Id.* at 42); (*see id.* at 36, 40-42). However, he also stated that the jury would not have heard his available defenses for self-defense and justification in the theft case if his cases had been tried separately because justification was not a defense for a theft offense. (*See id.* at 35-36, 40-41).

Trial counsel characterized the prosecutor's remarks in the Commonwealth's opening statement and closing argument as "borderline objectionable." (*Id.* at 16). He explained that it was not his practice to object during opening statements and closing arguments unless the remarks in question "clearly cross that line as objectionable" because "it would certainly draw the jury's attention" to them and "[t]he risk of a judge overruling the objection can really backfire in a situation like that." (*Id.* at 16, 34). Trial counsel agreed that he refrained from making objections because he did not want to cause an interruption and then have an objection overruled. (*See id.*

at 19). He also refrained from objections because the prosecutor "wouldn't be able to prove the things he was saying and [he] would call him on it later[.]" (*Id.*); (*see also id.* at 47-48) ("I would rather have him overtry his case and not be able to prove it than make an objection that is overruled.").

On cross-examination, trial counsel agreed, with respect to the remarks about Hamilton being a "thief," a "drug dealer," a "liar" and a "murderer" that the charges included offenses involving theft, drug dealing and murder, and that there was evidence that Hamilton had told untruthful things to the police. (*Id.* at 32-33). With respect to a remark about Hamilton committing an "execution style" shooting, trial counsel agreed that there was significant testimony about bullet trajectories and the evidence suggested that the shooting of Cutshall occurred at a downward angle. (*Id.* at 33).

Regarding the verdict sheet claim, trial counsel asserted that he believed that the verdict sheet was created by the trial court, but he was not certain of that. (*See id.* at 8). He testified that he did not recall that he had any reasonable or strategic basis for not objecting to the verdict sheet. (*See id.* at 10). On cross-examination, trial counsel agreed that he did not recall "having an issue with" the verdict sheet at the time of trial, that the jurors were instructed on the law for every single charge, and the court's instructions included both the *mens rea* and *actus reus* elements for each of the charges. (*Id.* at 31).

After reviewing post-hearing briefs from the parties, the PCRA court denied the ineffectiveness claims concerning the lack of objections to the joinder motion, the prosecutor's remarks and the verdict sheet. (**See** PCRA Court Opinion, 9/08/22 at 2-7). The PCRA court granted relief on the remaining claims, reversing the additional theft by receiving stolen property and criminal conspiracy convictions as duplicative.[6] (**See id.** at 7-9); (Order 9/08/22 at 1).

Hamilton timely filed notices of appeal for each of his underlying cases and a court-ordered concise statement of errors complained of on appeal.

He raises three issues for our review challenging the PCRA court's finding that trial counsel was not ineffective when he: (1) agreed to the joinder of his homicide and theft cases; (2) failed to object to the Commonwealth's "persistent and ill-measured rhetoric" throughout his trial; and (3) failed to object to the suggestive verdict slip. (**See** Hamilton's Brief, at 4).[7]

---

[6] No sentencing proceedings were necessary because the reversed convictions were originally deemed to be merged for sentencing purposes.

[7] In reviewing the denial of PCRA relief, our standard of review is limited to whether the record supports the PCRA court's factual determinations and whether its decision is free of legal error. **See Commonwealth v. Lopez**, 249 A.3d 993, 998 (Pa. 2021). We apply a *de novo* standard of review to the PCRA court's legal conclusions. **See Commonwealth v. Fears**, 86 A.3d 795, 804 (Pa. 2014). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Bishop**, 266 A.3d 56, 62 (Pa. Super. 2021) (citation omitted).

## II.

## A.

We are guided by the following legal principles in reviewing an ineffective assistance of counsel claim. In considering an ineffective assistance of counsel claim, we observe first that counsel is presumed effective and that a petitioner bears the burden to prove otherwise. **See Fears**, 86 A.3d at 804. To establish an ineffectiveness claim, a defendant must prove:

(1) The underlying claim has arguable merit; (2) no reasonable basis existed for counsel's actions or failure to act; and (3) [appellant] suffered prejudice as a result of counsel's error such that there is a reasonable probability that the result of the proceeding would have been different absent such error.

**Id.** (citation omitted). "Failure to prove any prong of this test will defeat an ineffectiveness claim. When an appellant fails to meaningfully discuss each of the three ineffectiveness prongs, he is not entitled to relief, and we are constrained to find such claims waived for lack of development." **Id.** (citations and internal quotation marks omitted).

With these legal principles in mind, we turn to Hamilton's allegations.

## B.

Hamilton first challenges the PCRA court's denial of his claim alleging that his trial counsel provided ineffective assistance by agreeing to the Commonwealth's motion for joinder. He maintains that his theft of the revolver was wholly immaterial for the jury's consideration of whether he shot

Cutshall with criminal intent or concealed the firearm illegally and, therefore, was inadmissible prior bad act evidence. He further asserts that counsel's reasons for failing to object were unreasonable and that he was prejudiced because it "enabled the Commonwealth to vilify [him] in the eyes of the jury as a thieving criminal and detract from his status as the robbery victim that it recognized he was." (Hamilton's Brief, at 51).[8]

We consider first the underlying merit of this claim.

**1.**

Hamilton argues that "the evidence in the theft case wasn't relevant, nor admissible, to the elements and defenses at issue in the homicide case" and that "theft of the revolver in the lead up to the homicide was not 'part of the natural development of the facts' of the homicide, rather it was mere 'coincidence.'" (Hamilton's Brief, at 22); (**see also** Trial Ct. Op., 1/03/20, at 1).

_____

[8] Procedurally, Hamilton argues that the Commonwealth's motion was untimely where it was filed and granted "on the eve of trial" in violation of Rule 582(B) and that "[t]his was a ground, in itself, to oppose joinder." (Hamilton's Brief, at 20, 21). However, this is waived where he does not further develop this procedural issue under the three ineffectiveness prongs or provide any legal authority to support his argument. **See Fears**, 86 A.3d at 804. Moreover, as noted by the Commonwealth, Rule 582(B) provides that where the Commonwealth has not provided the defendant notice that separate indictments will be tried together at or before arraignment, a "[joinder] motion must **ordinarily** be included in the omnibus pretrial motion," which means this timing is not a strict requirement. Pa.R.Crim.P. 582(B)(2) (emphasis added).

The Commonwealth asserts that it used evidence of the theft "to establish that [Hamilton] stole the same gun used in the homicide[;] therefore, … one charge is relevant to the other as it showed a progression of events[,] who possessed the revolver, how it came into [Hamilton's] possession, and that [it] was the same one stolen around the time of the homicide." (Commonwealth's Brief, at 21).

Pennsylvania Rule of Criminal Procedure 582 provides, in pertinent part, that "[o]ffenses charged in separate indictments or information may be tried together if: (a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so there is no danger of confusion[.]" Pa.R.Crim.P. 582(A)(1)(a).[9] This Court utilizes the following three-part test for evaluating whether joinder is appropriate in matters involving different acts or transactions:

> (1) whether the evidence of each of the offenses would be admissible in a separate trial for the other; (2) whether such evidence is capable of separation by the jury so as to avoid danger of confusion; and, if the answers to these inquiries are in the affirmative, (3) whether the defendant will be unduly prejudiced by the consolidation of offenses.

---

[9] Although Rule 582(A)(1)(b) provides that offenses charged in separate indictments may be tried together if they are part of the same transaction or occurrence, the Commonwealth only sought joinder under subsection (a). (**See** Commonwealth's Brief, at 19 ("the Commonwealth proceeded under Pa.R.Crim.P. 582(A)(1)(a)").

*Commonwealth v. Brookins*, 10 A.3d 1251, 1256 (Pa. Super. 2010) (citations omitted).

> [w]hether or not separate indictments should be consolidated for trial is within the sole discretion of the trial court[.] … Evidence of distinct crimes is inadmissible solely to demonstrate a defendant's criminal tendencies. Such evidence is admissible, however, to show a common plan, scheme or design embracing commission of multiple crimes, or to establish the identity of the perpetrator, so long as proof of one crime tends to prove the others. This will be true when there are shared similarities in the details of each crime.

*Commonwealth v. Andrulewicz*, 911 A.2d 162, 168 (Pa. Super. 2006) (citations omitted).

"Evidence of another crime is admissible where the conduct at issue is so closely related that proof of one criminal act tends to prove the other. Such evidence is particularly relevant to prove identity." *Commonwealth v. Natividad*, 773 A.2d 167, 174 (Pa. 2001), *cert. denied*, 535 U.S. 1099 (2002), *abrogated on other grounds*, *Commonwealth v. Freeman*, 827 A.2d 385 (Pa. 2003).

We find *Natividad* persuasive. In *Natividad*, the appellant was tried on consolidated indictments. The first indictment charged him for stealing victim one's dark colored Lincoln at gunpoint, utilizing a large silver gun, possibly a .357 Magnum. In the trunk of the Lincoln was a lumberjack style jacket. In the second indictment, the appellant was charged with shooting a second victim days later. The identity of the shooter of this second victim was at issue. "The person who shot [victim two] committed the crime with a large

chrome revolver, possibly a .357 Magnum. He was seen leaving the shooting wearing a lumberjack style jacket driving a dark Lincoln." *Natividad*, 773 A.2d at 174. Thus, this Court found the indictments were properly consolidated.

Importantly, here, there was no issue at trial about the identity of the shooter, but instead, about whether Hamilton acted in self-defense. The fact that days before he "coincidentally" had stolen the gun he utilized for the shooting was irrelevant to whether he either acted with criminal intent in shooting Cutshall or illegally concealed the firearm. (Trial Ct. Op., at 1) ("Coincidentally, [Hamilton] had stolen this handgun out of an unlocked pick-up truck the day before the robbery"). Thus, evidence that Hamilton had stolen the handgun he possessed was irrelevant and solely used to improperly demonstrate his criminal tendencies where there was no issue about the identity of the shooter, and there is no allegation that he stole the gun with the intent of shooting Cutshall. *See Andrulewicz*, 911 A.2d 162 at 168.

Hence, the joinder issue has underlying merit.

**2.**

Hamilton argues that he was prejudiced by the joinder of the theft and homicide cases because it "enabled the Commonwealth to vilify [him] in the eyes of the jury as a thieving criminal and detract from his status as the robbery victim that it recognized he was." (Hamilton's Brief, at 51); (*see also*

N.T. Trial I, at 19) ("The victim in that case was Seth Hamilton the defendant.").

As we have explained:

> The traditional justification for permissible joinder of offenses or consolidation of indictments appears to be the judicial economy which results from a single trial. The argument against joinder or consolidation is that where a defendant is tried at one trial for several offenses, several kinds of prejudice may occur: (1) [t]he defendant may be confounded in presenting defenses, as where his defense to one charge is inconsistent with his defenses to the others; (2) the jury may use the evidence of one of the offenses to infer a criminal disposition and on the basis of that inference, convict the defendant of the other offenses; and (3) the jury may cumulate the evidence of the various offenses to find guilt when, if the evidence of each offense had been considered separately, it would not so find.

*Commonwealth v. Richard*, 150 A.3d 504, 509 (Pa. Super. 2016) (citation omitted). Although the "liberal rule for the joinder of offenses reflects a concern for economy of judicial resources[,] [i]t, however, fails to recognize the possibility that the jury may misuse the evidence no matter however, separable and distinct." *Commonwealth v. Morris*, 425 A.2d 715, 719 (Pa. 1981).

> The "simple and distinct" test ... may well be an appropriate standard for measuring the prejudice resulting from the jury's confusing and cumulating the evidence. It does not address itself, however, to the graver mischief possible where the jury, while limiting its consideration of the evidence to the crime to which it relates, properly finds the defendant guilty of one crime but considers the finding probative of his guilt of another.

*Id.* (citation omitted).

Further, "the conservation of judicial resources and the efficient administration of justice, while estimable goals, does not justify the exposure of an accused to such a higher probability of prejudice." *Id.* Importantly:

> the saving of judicial time can never be given preference over the integrity of the factfinding process. When it is concluded that the evidence of the one crime would not be admissible in the separate trial for the other, we are in effect saying that the evidence is irrelevant and prejudicial in the second trial. To allow irrelevant and prejudicial evidence to influence a verdict in the name of judicial economy is abhorrent to our sense of justice. Additionally, defendants in joint trials are treated differently from those who receive separate trials as a result of the lack of uniformity in the admission in the joint trial of evidence which would have been inadmissible in one of the single trials had there been no joinder.

*Id.* at 720.

As explained above, the fact that Hamilton coincidentally stole the firearm was irrelevant in the homicide trial and opened the door for the prosecutor to repeatedly characterize Hamilton as a thief, allowing the jury to consider this as probative in his homicide trial. While judicial economy is an understandable consideration when confronted with a joinder motion, allowing the admission of irrelevant evidence to potentially influence the verdict certainly creates a "reasonable probability" of prejudice. *Fears*, 86 A.3d at 804. Therefore, the second prong of the ineffectiveness test is satisfied.

**3.**

Hamilton maintains that the reasons proffered by his trial counsel for failing to contest the Commonwealth's joinder motion lacked a reasonable strategic basis. We agree.

It is undisputed that trial counsel did not contest the Commonwealth's motion. (*See* N.T. PCRA Hearing, at 21); (trial counsel testifying that he "agreed to have the cases consolidated."). At the PCRA hearing, trial counsel testified that he elected not to oppose joinder because he thought evidence of the theft "was probably going to come in" at the homicide trial and that the Commonwealth would meet its burden for joinder. (*Id.* at 21, 38). Further, trial counsel did not want to delay the homicide trial where the Commonwealth had suggested that if the cases were not joined, it would try the theft case first. (*See id.* at 21-22). Finally, counsel thought that joinder "may have helped the theft case" because the jury would be instructed on the defense of justification." (*Id.* at 36, 40-42). We do not find these explanations reasonable.

First, as stated above, the evidence of theft was irrelevant to the homicide case because the theft charge had no common elements with the homicide related charges. Trial counsel's reason then for not opposing joinder because the evidence would have come in anyway was also unreasonable because evidence of those charges would not have been admissible, as the Commonwealth suggests, under the "res gestae" exception because it undisputed that the theft of the gun did not go to "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *See Natividad*; Pa.R.E. 404(b)(2). Such evidence would have also been inadmissible to demonstrate a defendant's

criminal tendencies. *See Andrulewicz;*. Pa.R.E. 404(b)(1). Trial counsel's reason then for not opposing joinder because the evidence would have come in anyway was unreasonable because that evidence was inadmissible.

Second, as to his claim that he did not object to joinder because if he did, the trial would have been delayed because that theft charge somehow would take precedent over the homicide related charges, assuming that there would have been a delay in the homicide-related charges, we do not see that as a justifiable reason for acceding to joinder when trying them together was prejudicial. Moreover, if there was some valid reason that we cannot discern for not delaying the homicide-related charges, trial counsel's position assumes that the trial court was going to grant the Commonwealth's joinder motion, filed on the Friday before jury selection was scheduled for the following Monday on the homicide-related charges, when the theft charge was irrelevant to those charges. In any event, even if there was a delay caused by the Commonwealth somehow being allowed to proceed with the theft case, it would have been brief[10] and, in any event, considering the "higher probability of prejudice" suffered by Hamilton due to the joinder, counsel's decision to acquiesce to it was unreasonable. *Morris*, 425 A.2d at 719.

---

[10] A review of the trial transcript in this matter reflects that the testimony about the theft was 39 pages and included two witnesses. (*See* N.T. Trial I, at 38-49, 90-118).

Finally, counsel's position that joinder helped the theft case because the jury was instructed on justification is nonsensical where, as acknowledged by trial counsel, it was irrelevant to the theft case. (**See** N.T. PCRA Hearing, at 35-36, 40-41) (trial counsel agreeing that justification only applied to the homicide charge since it is not a defense for a theft offense). Therefore, the lack of a reasonable-basis prong of the ineffective assistance of counsel test has been met.

Accordingly, we reverse the order of the PCRA court and remand for a new trial on the basis that counsel rendered ineffective assistance when he failed to object to the Commonwealth's motion for joinder. Given this disposition, we decline to address the remainder of Hamilton's claims.

Order reversed. Case remanded for a new trial. Jurisdiction relinquished.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 10/2/2023