**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : IN THE SUPERIOR COURT OF |
| | :       PENNSYLVANIA |
| | : |
| v. | : |
| | : |
| | : |
| ANDREW JOHN DOUGAN | : |
| | : |
| | : No. 1388 EDA 2025 |

Appeal from the PCRA Order Entered April 30, 2025
In the Court of Common Pleas of Pike County
Criminal Division at No(s): CP-52-CR-0000233-2019

BEFORE: PANELLA, P.J.E., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY PANELLA, P.J.E.:         **FILED APRIL 30, 2026**

Andrew John Dougan appeals *pro se* from the order entered in the Court of Common Pleas of Pike County denying his first Post-Conviction Relief Act ("PCRA")[1] petition without a hearing. After careful review, we affirm.

The PCRA court summarized the factual and procedural history of the matter as follows:

> On March 21, 2019, at approximately 7:39 a.m., Trooper Jessica Quinn [] of the Pennsylvania State Police, Blooming Grove Barracks, was dispatched to a single-vehicle accident in Lehman Township, Pike County. She arrived on scene at 8:04 a.m. and observed a red Chrysler Pacifica with heavy damage. Emergency medical personnel were already attending to the vehicle's operator, later identified as [Dougan]. Trooper Quinn noted that [Dougan] had cuts and burns on his face and hands, slurred speech, a strong odor of alcohol, and was hesitant in answering

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S.A. §§ 9541-9546.

questions. A can of Four Loko was visible in the car, and the interior smelled strongly of alcohol.

[Dougan] refused a roadside breath test and was transported to Lehigh Valley Health Network Pocono Hospital for further medical treatment. Trooper Quinn followed and read [Dougan] the ***O'Connell***[2] warnings while he waited for an X-ray. When asked to consent to a blood test, [Dougan] again refused, prioritizing medical treatment. Trooper Quinn subsequently obtained a search warrant for [Dougan's] medical blood results, which revealed a blood alcohol concentration ("BAC") of 0.16%. The hospital record showed his blood was drawn at 10:39 a.m.

A criminal complaint was filed on March 23, 2019, and formal charges followed on May 24, 2019, under Criminal Information No. 233-2019. [Dougan] was charged with two counts of driving under the influence ("DUI"): highest rate of alcohol (BAC .16+)— 2nd Offense, DUI: general impairment—2nd offense, accidents involving damage to attended vehicle or property, driving on roadways laned for traffic, driving at an unsafe speed, careless driving, reckless driving, and accidents involving damage to unattended vehicle or property.[3] Due to a prior DUI resulting in a fatality, [the DUI—highest rate] offense was [graded as] a third-degree felony.

Following a two-day jury trial on July 13, 2021, [Dougan] was found guilty of both DUI counts, with the court concluding that the Commonwealth had shown good cause for the delay in chemical testing. The court found that Trooper Quinn responded promptly, that [Dougan] refused the breath test, and that transport to the hospital caused an unavoidable delay. From the time of the accident until the blood draw at 10:39 a.m., [Dougan] remained under continuous supervision, with no evidence of additional alcohol consumption.

On August 19, 2021, [Dougan] was sentenced to 14 months to 7 years in state prison for DUI—highest rate. The DUI—general

_____

[2] ***See Commonwealth, Department of Transportation v. O'Connell***, 555 A.2d 873 (Pa. 1989).

[3] 75 Pa.C.S.A. §§ 3802(c), 3802(a)(1), 3743(a), 3309(1), 3361, 3714(a), 3736(a), and 3745(a), respectively.

impairment charge was merged into the higher count, and [Dougan] was also ordered to pay fines and costs for the summary offenses. A post-sentence motion for reconsideration was filed on August 30, 2021, and denied on September 1, 2021. [Dougan] filed a notice of appeal on October 1, 2021. In April 2022, the Superior Court permitted prior counsel to withdraw and instructed the trial court to determine [Dougan's] eligibility for appointed counsel. By June 13, 2022, the court confirmed his eligibility. On October 4, 2022, the Superior Court remanded the case for 90 days to allow counsel to file a concise statement of errors. That statement was submitted on October 25, 2022, raising several appellate issues. The Superior Court ultimately affirmed the trial court's sentence. [**See Commonwealth v. Dougan**, 317 A.3d 619, 2024 WL 1267674 (Pa. Super. 2024 filed March 26, 2024) (unpublished memorandum).]

On March 7, 2025, [Dougan] filed a timely *pro se* [PCRA petition]. Attorney Steven Benedict was appointed on March 12, 2025, to review the claims. [On April 4, 2025, counsel filed a motion to withdraw as counsel and a no-merit letter.] On April 8, 2025, the court issued notice of [its] intent to dismiss [Dougan's petition without conducting an evidentiary hearing, pursuant to Pa.R.Crim.P. 907(1). Dougan] responded on April 28, 2025, and on April 30, 2025, the court denied the petition and issued a final dismissal of the PCRA and withdrawal of counsel. [Dougan] filed a notice of appeal on May 30, 2025, and a concise statement of errors complained of on appeal[, pursuant to Pa.R.A.P. 1925(b),] on June 16, 2025, raising issues for appellate review.

Trial Court Opinion, 7/21/25, at 1-3 (unnecessary capitalization, quotation marks, and footnotes omitted). In response, the PCRA court issued its opinion, pursuant to Pa.R.A.P. 1925(a), on July 21, 2025.

On appeal, Dougan raises the following questions for our review:

1. May the Superior Court conduct *sua sponte* review of [Dougan's] illegal sentence, it being a pure issue of law, given that [Dougan] has already served in excess of the five year lawful maximum for a misdemeanor of the first degree and is still incarcerated? Whether [Dougan's] first PCRA issue otherwise merits PCRA relief?

2. Whether the PCRA court erred when it denied [Dougan's] PCRA petition without a hearing, permitted his attorney to withdraw, and did not allow amendment of [Dougan's] petition?

Appellant's Brief, at 2-3 (unnecessary capitalization and suggested answers omitted; formatting altered).

Dougan challenges the denial of his PCRA petition without a hearing.

Our standard of review of the denial of a PCRA petition is limited to examining whether the record evidence supports the court's determination and whether the court's decision is free of legal error. This Court grants great deference to the findings of the PCRA court if the record contains any support for those findings. We give no such deference, however, to the court's legal conclusions.

A petitioner is not entitled to a PCRA hearing as a matter of right; the PCRA court can decline to hold a hearing if there is no genuine issue concerning any material fact[,] the petitioner is not entitled to post-conviction collateral relief, and no purpose would be served by any further proceedings. A reviewing court on appeal must examine each of the issues raised in the PCRA petition in light of the record in order to determine whether the PCRA court erred in concluding that there were no genuine issues of material fact and in denying relief without an evidentiary hearing.

*Commonwealth v. Williams*, 313 A.3d 249, 253 (Pa. Super. 2024) (citations, quotation marks, and brackets omitted)

In his first issue, Dougan challenges the legality of his sentence. "A challenge to the legality of a sentence is a cognizable claim under the PCRA." *Commonwealth v. Hernandez*, 328 A.3d 1159, 1165 (Pa. Super. 2024) (citation omitted); 42 Pa.C.S.A. § 9543(a)(2)(vii). "When reviewing the legality of a sentence, our standard of review is *de novo* and our scope of review is plenary." *Id.* (citation omitted).

- 4 -

Dougan avers that he is serving an illegal sentence for his conviction of DUI—highest rate[4] because the court improperly applied 75 Pa.C.S.A. § 3803(a)(3) in grading this DUI offense as a third-degree felony based on his prior conviction of vehicular homicide while DUI.[5] **See** Appellant's Brief, at 3. Dougan contends that the trial court should have instead applied section 3803(b)(4) to grade his DUI conviction as a first-degree misdemeanor. **See id.** at 3, 6. Dougan further contends that had the court properly graded his section 3802(c) conviction as a first-degree misdemeanor, he would "have been subject to a penalty no greater than five years' incarceration." **Id.** at 6 (citations omitted).

Where an issue implicates the interpretation and application of a statute, our standard of review is well-settled:

> A trial court's application of a statute is a question of law, and our standard of review is plenary. Moreover, our review is limited to determining whether the trial court committed an error of law. In interpreting any statute, appellate courts must take note of the principles of statutory interpretation and construction. The principal objective of interpreting a statute is to effectuate the intention of the legislature and give effect to all of the provisions of the statute. In construing a statute to determine its meaning, courts must first determine whether the issue may be resolved by reference to the express language of the statute, which is to be read according to the plain meaning of the words. When analyzing

---

[4] Section 3802(c) provides: "An individual may not drive, operate or be in actual physical control of the movement of a vehicle after imbibing a sufficient amount of alcohol such that the alcohol concentration in the individual's blood or breath is 0.16% or higher within two hours after the individual has driven, operated or been in actual physical control of the movement of the vehicle."

[5] **See** 75 Pa.C.S.A. § 3735.

- 5 -

particular words or phrases, we must construe them according to the rules of grammar and according to their common and approved usage. Words of a statute are to be considered in their grammatical context. Furthermore, we may not add provisions that the General Assembly has omitted unless the phrase is necessary to the construction of the statute. A presumption also exists that the legislature placed every word, sentence and provision in the statute for some purpose and therefore courts must give effect to every word.

***Commonwealth v. Wilson***, 327 A.3d 659, 662-63 (Pa. Super. 2024) (citation omitted); ***see*** 1 Pa.C.S.A. § 1922 (we presume "[t]hat the General Assembly intends the entire statute to be effective and certain."). Section 1933 of the Statutory Construction Act mandates that, where both general and specific statutory provisions apply to the same subject matter, the special provision prevails over the general provision of the statute "unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail." 1 Pa. C.S.A. § 1933.

Section 3803 of our Vehicle Code establishes the grading scheme for DUI offenses. ***See*** 75 Pa.C.S.A. § 3803. Accordingly, we begin by reviewing the DUI grading provisions at issue in the case *sub judice*.

**§ 3803. Grading**

**(a) Basic offenses.**—Except as provided in subsections (b) and (c):

\* \* \*

(3) An individual who violates section 3802 and has three or more prior offenses or has previously been convicted of a violation of section 3735 (relating to homicide by vehicle

while driving under influence) commits a felony of the third degree.[6]

* * *

**(b) Other offenses.—**

* * *

(4) An individual who violates section 3802(a)(1) where the individual refused testing of breath or chemical testing pursuant to a valid search warrant, court order or any other basis permissible by the Constitution of the United States and the Constitution of Pennsylvania, or who violates section 3802(c) or (d) and who has one prior offense commits a misdemeanor of the first degree.[7]

75 Pa.C.S.A. § 3803. Our Vehicle Code further defines "prior offenses" as, *inter alia*, "an offense under section 3802 (relating to driving under the influence of alcohol or controlled substance)[.]" 75 Pa.C.S.A. § 3806(a)(1).

Dougan argues that "by section 3803's plain language, the provisions of subsection 3803(a) are applicable only if subsection 3803(b) does not apply[,]" because the grading provisions set forth in subsection 3803(a) "are preceded by the operative phrase 'Except as otherwise provided in subsection (b)[.]'" Appellant's Brief, at 5-6 (citing 75 Pa.C.S.A. § 3803). Thus, Dougan

---

[6] "A crime is a felony of the third degree if it is so designated in this title or if a person convicted thereof may be sentenced to a term of imprisonment, the maximum of which is not more than seven years." 18 Pa.C.S.A. § 106(b)(4).

[7] "A crime is a misdemeanor of the first degree if it is so designated in this title or if a person convicted thereof may be sentenced to a term of imprisonment, the maximum of which is not more than five years." 18 Pa.C.S.A. § 106(b)(6).

concludes that the court erred in grading his section 3802(c) conviction as a third-degree felony and imposed an illegal sentence of 14 months' to 7 years' incarceration. ***See id.*** at 7-8. We disagree.

On December 21, 2011, Dougan entered a plea of *nolo contendere* to a violation of section 3735(a). ***See*** CP-45-CR-0002422-2010.[8] Dougan correctly notes that our General Assembly amended section 3803(a) in 2014 to include the phrase "Except as provided in subsection (b)" and thereby gave subsection (b) precedence over the provisions of subsection (a). 75 Pa.C.S.A. § 3803(a), 2014, Oct. 27, P.L. 2905, No. 189, § 1, imd. effective. However, his argument ignores the significance of the General Assembly's subsequent amendment of section 3803 in 2018 to add subsection (a)(3), which specifically provides for enhanced grading of DUI offenses where, *inter alia*, a defendant has a prior section 3735 conviction. ***See*** 75 Pa.C.S.A. § 3803(a), 2018, Oct. 24, P.L. 925, No. 153, § 3, effective Dec. 24, 2018. By amending section 3803 to make explicit reference to prior section 3735 convictions in section 3803(a)(3), the General Assembly made a significant distinction between the general "prior offense" definition set forth in section 3806 and manifestly expressed its intent to create a specific grading provision that elevates a section 3802 DUI offense

---

[8] "[F]or purposes of a criminal case, a plea of *nolo contendere* is equivalent to a plea of guilty." ***Commonwealth v. Norton***, 201 A.3d 112, 115 n.2 (Pa. 2019) (citation omitted). Furthermore, "a guilty plea results in a conviction and a criminal record." ***Commonwealth v. Shifflett***, 335 A.3d 1158, 1174 (Pa. 2025).

to a third-degree felony where a defendant has been previously convicted of vehicular homicide while DUI.[9] To apply section 3803(b)(4) and grade Dougan's conviction as a first-degree misdemeanor under these circumstances would ignore the General Assembly's intent in subsequently amending section 3803 and render subsection (a)(3) ineffective. *See* 1 Pa.C.S.A. § 1922. Therefore, the specific grading provision set forth in section 3803(a)(3) applies to Dougan's 3802(c) offense, *see* 1 Pa. C.S.A. § 1933, and the trial court correctly graded Dougan's section 3802(c) conviction as a third-degree felony. Accordingly, Dougan's contention that the sentence imposed on the count of DUI—highest rate exceeds the statutory maximum lacks merit and does not entitle him to relief. *See* 18 Pa.C.S.A. § 106(b)(4).

In his second issue, Dougan avers that direct appeal counsel "was ineffective for failing to properly preserve an issue related to the two-hour rule, [which] has arguable merit and therefore should not have been dismissed by the PCRA court."[10] Appellant's Brief, at 4. Dougan's ineffectiveness claim does not merit relief.

---

[9] Our sentencing guidelines further confirm that this application of the enhanced offense grading is required by section 3803(a)(3). *See* 42 Pa.C.S.A. § 303.15 (designating section 3802(c) conviction "DUI-highest rate of alcohol: BAC >=.16 (prior conviction 75-3735)" as "F-3").

[10] On direct appeal, a panel of this Court was constrained to find Dougan's claim concerning a two-hour rule violation waived because Dougan "failed to provide [] the necessary transcripts to effectuate meaningful appellate review[.]" *Dougan*, 2024 WL 1267674, at *5. Dougan's ineffectiveness claim
*(Footnote Continued Next Page)*

A PCRA petitioner may be eligible for relief if he pleads and proves, by a preponderance of the evidence, that his conviction or sentence was a result of the "[i]neffective assistance of counsel which, in the circumstances of the particular case, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place." 42 Pa.C.S.A. § 9543(a)(2)(ii).

> When analyzing ineffectiveness claims, we begin with the presumption counsel was effective. To overcome this presumption and be entitled to relief on an ineffectiveness claim, a petitioner must satisfy the performance and prejudice standard set forth in **Strickland v. Washington**, 466 U.S. 668 (1984), by a preponderance of the evidence. [Pennsylvania courts apply] **Strickland** by requiring a petitioner to establish three elements: (1) the underlying claim has arguable merit; (2) no reasonable basis existed for counsel's action or failure to act; and (3) appellant suffered prejudice as a result of counsel's error, with prejudice measured by whether there is a reasonable probability that the result of the proceeding would have been different had counsel not erred. **See Commonwealth v. Pierce**, 527 A.2d 973, 975 (Pa. 1987). Furthermore, [courts] are not required to analyze the elements of an ineffectiveness claim in any particular order; if a claim fails under any element of the **Strickland** test, [a court] may proceed to that element first.

**Commonwealth v. Johnson**, 335 A.3d 685, 709 (Pa. 2025) (some case citations and quotation marks omitted). "When an appellant fails to meaningfully discuss each of the three ineffectiveness prongs, he is not

_____

appears to be based upon direct appeal counsel's failure to include the suppression hearing transcript in the certified record on direct appeal. However, we note that the necessary transcript, *i.e.*, the notes of testimony from Dougan's suppression hearing, appears in the certified record before us. **See** N.T. Omnibus Pretrial Hearing, 10/30/20.

entitled to relief and we are constrained to find such claims waived for lack of development." ***Commonwealth v. Hamilton***, 303 A.3d 823, 831 (Pa. Super. 2023) (citation omitted).

In his appellate brief, Dougan fails to provide meaningful discussion of the ineffectiveness prongs, ***see*** Appellant's Brief, at 8-16; therefore, the elements of his ineffectiveness claim are not established as being undeveloped. ***See Hamilton***, 303 A.3d at 831. Moreover, to the extent that Dougan contends his underlying claim concerning a violation of the two-hour rule has arguable merit, he has failed to cite any legal authority to support his contention, and this claim must also be denied as undeveloped. ***See*** Pa.R.A.P. 2119(a) (requiring the argument section of an appellant's brief to contain "discussion and citation of authorities as are deemed pertinent"); ***Commonwealth v. Arias***, 286 A.3d 341, 349 (Pa. Super. 2022) (finding waiver where appellant failed to develop claims with citation to applicable legal authority). Therefore, Dougan has waived his ineffectiveness claim and is not entitled to his requested relief.

Moreover, even if Dougan had adequately developed his ineffectiveness claim, he would not be entitled to relief because his underlying claim lacks arguable merit. Dougan contends that the Commonwealth failed to establish an exception to the two-hour rule, embodied in section 3802(g) of our Vehicle Code, that would permit the results of his blood-draw to be introduced into evidence at trial. ***See*** Appellant's Brief, at 16.

The admission of evidence is solely within the discretion of the trial court, and a trial court's evidentiary rulings will be reversed on appeal only upon an abuse of that discretion. An abuse of discretion is not simply an error of judgment, but is an overriding misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will, or partiality.

***Commonwealth v. Warren***, 350 A.3d 1018, 1033 (Pa. Super. 2025) (brackets and citation omitted).

To sustain a conviction for DUI—highest rate, the Commonwealth must establish the following elements:

(1) that a person drove, operated or was in actual physical control of a motor vehicle; and (2) that such action was conducted after imbibing enough alcohol that the actor's BAC reached 0.16% within two hours after driving. [***See*** 75 Pa.C.S.A. 3802(c).] Section 3802(g) states that a blood test taken more than two hours after the defendant drove is "sufficient" to prove the "two-hour rule" for a violation of DUI—highest rate. 75 Pa.C.S.[A] § 3802(g). However, the Commonwealth must demonstrate (1) there was good cause for the delay, and (2) the defendant did not consume an intoxicant between the time of the arrest and the time of testing. [***See*** 75 Pa.C.S.A § 3802(g)(1), (2).]

***Commonwealth v. Starry***, 196 A.3d 649, 657 (Pa. Super. 2018) (quotation marks and case citations omitted). For purposes of section 3802(g)(2), our Supreme Court has recognized that "seriously impaired persons undergoing emergency medical treatment will not have access to alcoholic beverages[.]" ***Commonwealth v. Starry***, 224 A.3d 312, 321 (Pa. 2020).

In the order denying Dougan's omnibus pretrial motion, the trial court addressed Dougan's suppression claim as follows:

[Dougan] seeks to suppress the results of his blood test based on the assertion that his blood was not drawn within two [] hours of

- 12 -

the alleged accident. The Commonwealth has charged [Dougan] with two [] counts of DUI under section 3802(a)(1) and one [] count under section 3802(c) of the [] Vehicle Code. [The] Superior Court has acknowledged that the two [] hour limit for testing is not applicable to a charge of general impairment under section 3802(a)(1). [*See Commonwealth v. Eichler*, 133 A.3d 775, at 787 (Pa. Super. 2016)]. Accordingly, [Dougan] is not entitled to any suppression relief for the two [] charged offenses under section 3802(a)(1).

[Section] 3802(c) provides, however, that the Commonwealth must prove that the defendant operated his motor vehicle within two [] hours of his blood concentration being 0.16% or higher for purposes of Count II herein. Section 3802(g) sets forth an exception to the two [] hour rule. Under said section, the Commonwealth must show good cause explaining why the test was not conducted within the two [] hours and that the defendant did not imbibe any alcohol in the interim. 75 Pa.C.S.A. § 3802(g); [*see Eichler*, 133 A.3d at 791.]

As requested by the Commonwealth, [the] court had the opportunity to review our Supreme Court's decision in the matter of [*Starry*, in which it] noted that an extraordinarily elevated chemical test result may serve as a strong inference that a defendant operated a motor vehicle under the influence even if the test occurred outside of the two [] hour window. *Id.*[] at 318 [("[W]here there is evidence of an extraordinarily elevated blood test result and the time between the expiration of the two-hour window and testing is reasonably close, the Commonwealth may proceed to a jury determination without the necessity to adduce expert testimony.")]. [The] *Starry* [Court] also opined that the necessity for and timing of medical treatment can provide an investigating officer with a reasonable inference that a blood test of a DUI suspect may ensue promptly for medical reasons. [*See id.*, at 320.]

In this case, Trooper Quinn was dispatched to the accident scene at 7:39 a.m. with the accident having occurred shortly prior thereto. Trooper Quinn arrived on scene at 8:04 a.m. The officer received information from the emergency personnel that [Dougan] was located in the wooded area near the accident scene and medical treatment started prior to the officer's arrival. During the time of Trooper Quinn being on scene, [Dougan] was either in the direct view of the state police and/or medical personnel. As

indicated previously, the medical personnel transported [Dougan] to LVHN Pocono in the ambulance.

From the additional time of arriving at LVHN Pocono until she left the hospital, Trooper Quinn kept [Dougan] within her eyesight. Trooper Quinn read [Dougan] his *O'Connell* warnings shortly after arriving at the hospital and while [Dougan] was waiting to have an x-ray taken. [Dougan] did not consent to a blood draw as requested by Trooper Quinn. As such, the officer decided to leave the hospital shortly thereafter and obtained a search warrant for the results of [Dougan's] medical blood testing.

For purposes of this omnibus pre-trial motion, [the court] find[s] that the LVHN Pocono staff drew [Dougan's] blood at 10:29 a.m. which was more than two [] hours from the time [Dougan] was alleged to have driven his vehicle. Accordingly, Section 3802(g) is applicable hereto. [The court must next determine whether] the Commonwealth has established good cause as to why the chemical test sample was not taken within two [] hours and whether the Commonwealth established that [Dougan] did not imbibe any alcohol between the time of his arrest and the taking of the sample.

We conclude that Trooper Quinn responded in a timely manner to the accident scene and made appropriate inquiries of [Dougan] at the scene given the facts he was apparently injured in a motor vehicle accident and was receiving medical treatment from emergency personnel. At the scene, [Dougan] refused to take a pre-breath test and was not in a condition to take field sobriety tests. The ambulance personnel transported [Dougan] in a timely manner to the closest hospital, LVHN Pocono which was about 35 minutes from the accident scene.

While at the hospital, Trooper Quinn promptly advised [Dougan] of his *O'Connell* warnings and requested that he take a chemical blood test to which [Dougan] refused. [Dougan's] blood was subsequently drawn by the LVHN staff at 10:29 a.m. as part of his medical treatment. Based on the above facts, we conclude that the Commonwealth has established good cause as to the chemical test sample not being drawn within two [] hours of [Dougan's] accident.

In addition, the Commonwealth has established that [Dougan] did not imbibe any alcohol between the time of his arrest and the

- 14 -

drawing of his blood sample by the LVHN Pocono staff. Trooper Quinn's testimony establishes that [Dougan] was under the eyeball supervision of the police and/or the medical personnel throughout the relevant time period and that he did not imbibe any alcohol in that time frame. Accordingly, for the purpose of this omnibus pre-trial motion, the Commonwealth has established good cause for application of the section 3802(g) exception at this time.

[The court] find[s] our decision to be consistent with the Superior Court's earlier declaration in [] **Eichler** and our Supreme Court's recent ruling in [] **Starry**. This conclusion applies to all three [] of the charged DUI offenses herein. In light of the Commonwealth's presentation of good cause for application of the Section 3802(g) exception and the presentation of sufficient evidence, *i.e.*, highest blood test results and medical treatment evidence, to support an inference of driving under the influence within a two [] hour time period, we conclude that it is appropriate to permit the Commonwealth to proceed to a jury trial herein on the charged DUI offenses.

Trial Court Order, 1/19/21, at 3-7 (unpaginated) (unnecessary capitalization omitted). Based upon these pretrial findings and determinations, the court permitted the Commonwealth to introduce evidence of Dougan's blood alcohol test results at trial. **See** 1925(a) Opinion, 1/3/23, at 6-7.

Upon our review of the record, including the suppression hearing transcript, we discern no legal error or abuse of discretion by the trial court in finding the two-hour exception set forth in section 3802(g) applicable and admitting evidence of Dougan's blood-draw results at trial. **See Warren**, 350 A.3d at 1033. Therefore, Dougan's underlying claim of a two-hour rule violation lacks arguable merit. Accordingly, even if Dougan had adequately developed his ineffectiveness claim concerning direct appeal counsel's failure

- 15 -

to obtain the suppression hearing transcript, his claim would fail. **See Johnson**, 335 A.3d at 709.

For the foregoing reasons, we discern no legal error by the PCRA court in denying Dougan's PCRA petition without a hearing. **See Williams**, 313 A.3d at 253. Dougan is not entitled to PCRA relief, and we affirm.

Order affirmed.


Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 4/30/2026